

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

JLG/PGS/MEF                                  *610 Federal Plaza*
F. #2016R01021                               *Central Islip, New York 11722*

July 6, 2022

By ECF

The Honorable Gary R. Brown
United States District Judge
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

> Re:   United States v. Eduardo Portillo
>        Criminal Docket No. 16-403 (S-7) (GRB)

Dear Judge Brown:

The Government respectfully submits this letter in connection with the sentencing of defendant Eduardo Portillo, also known as "Firuli" and "Tito" (the "defendant"), an associate of the violent transnational criminal enterprise La Mara Salvatrucha (the "MS-13"), presently scheduled for July 12, 2022 before Your Honor, and in response to the defendant's sentencing submission dated June 2, 2022 (the "Def. Ltr."), which seeks an unspecified below-Guidelines sentence.

The defendant has a United States Sentencing Guidelines ("Guidelines") range of 262 to 327 months' imprisonment, as set forth in the United States Probation Department's ("Probation") Presentence Investigation Report ("PSR") and Sentencing Recommendation ("Sent. Rec."), both dated April 8, 2022, in which Probation recommends a bottom-of-the Guidelines sentence of 262 months' imprisonment. The Government has no objections to the PSR, and respectfully requests that the Court impose a sentence within the applicable advisory Guidelines range, which appropriately captures the defendant's depraved and inexcusable conduct in the brutal murder of 15-year old Javier Castillo on behalf of the MS-13.

Background

The defendant's arrest, extradition, and conviction resulted from an ongoing investigation by the Government and the Federal Bureau of Investigation's Long Island Gang

Task Force (the "Task Force") into acts of violence committed by members and associates of the MS-13 operating in various towns across Long Island, and internationally. The MS-13 is organized into certain sub-groups or "cliques." One such clique of the MS-13 is the Sailors Locos Salvatruchas Westside (the "Sailors") clique, which operated in the towns of Brentwood and Freeport, among other areas of Long Island, as well as in other states across the country and in Central America, and of which the defendant was an aspiring member. *See* PSR ¶¶ 4, 6, 8, 9. As set forth herein, the defendant willfully participated in illegal activities on behalf of the Sailors clique, including the brutal murder of Castillo, who the defendant and other MS-13 members suspected was a rival gang member, and the distribution of narcotics, the proceeds of which funded the clique's operations.

>        A.        The October 10, 2016 Murder of Javier Castillo

On October 13, 2016, Castillo, who was 15 years-old, was reported missing by his family to the Suffolk County Police Department ("SCPD"). Subsequent investigation by the SCPD determined that Castillo was last seen alive by family members on the afternoon of October 10, 2016, and that his cellular telephone was last active on that date. Castillo's brother informed the SCPD that he was told by a family member, who had ties with the MS-13, to stop looking for Castillo, because he was already "gone and buried." PSR ¶ 23.

The Task Force investigation ultimately determined that the defendant, who was 19-years old at the time, along with several other members and associates of the Sailors clique of the MS-13 – including the clique's New York leader and its local leader – murdered Castillo because they believed he was a member of the rival 18th Street gang, and possibly bore an 18th Street tattoo on his hand. PSR ¶ 24.

The MS-13 members devised a plan, in which the defendant, who was friendly with Castillo, would lure him to a secluded location under the guise of smoking marijuana together. PSR ¶ 24. On the night of the murder, the defendant and Castillo piled into a car with other MS-13 members and associates in Brentwood, and drove to Freeport – over 20 miles away – where they met several other MS-13 members, who invited Castillo to smoke marijuana with them in nearby Cow Meadow Park. PSR ¶ 24. Once the group arrived at the park, the MS-13 members and associates lured Castillo through the woods, to an isolated saltwater marsh, where they viciously attacked him with a machete. PSR ¶ 24. The MS-13 members and associates, including the defendant, took turns hacking Castillo with the machete until he was dead. PSR ¶ 24. They then dug a hole and buried Castillo's body. PSR ¶ 24.

On October 24, 2017, members of the Task Force conducted a search at Cow Meadow Park and located a body in an advanced state of decomposition, buried in the marsh along the water. PSR ¶ 25. Subsequent DNA testing by the Nassau County Medical Examiner's Office ("NCME") confirmed that the body was Castillo. PSR ¶ 25.

B.      Conspiracy to Distribute Narcotics

From April 2016 up through and including July 2017, in order to finance the illegal operations of the Sailors clique, the defendant and his fellow members and associates regularly sold street-level quantities of marijuana and cocaine in Brentwood and surrounding areas, which they obtained from clique leaders.  PSR ¶ 36.  After the sales, the profits were turned over to the clique leaders, for use in, *inter alia*, purchasing firearms for use by clique members, wiring money to MS-13 leaders in El Salvador, and buying additional narcotics for further distribution.  PSR ¶¶ 36, 40.

C.      The Defendant's Federal Case

On May 30, 2018, a grand jury sitting in this district returned a Fifth Superseding Indictment, captioned United States v. Jhonny Contreras, et al., 16 Cr. 403 (S-5) (JFB), charging the defendant, and numerous other MS-13 members and associates, with, *inter alia*, racketeering, narcotics trafficking, and the murder of Castillo.  A warrant was issued for the defendant's arrest at that time (ECF Dkt. No. 450); however, he had already been removed from the country to El Salvador by immigration authorities, on March 23, 2018.  PSR ¶¶ 74, 83.[1]

In connection with these federal charges, an INTERPOL Red Notice for the defendant's arrest internationally was published on December 13, 2018.  The defendant was arrested in Morazán, El Salvador on February 23, 2019, and was detained there pending his extradition to the United States, which was formally authorized by the Supreme Court of Justice of El Salvador on October 6, 2020.  The defendant was thereafter extradited to the U.S. on November 6, 2020.  PSR ¶ 37.

On September 23, 2021, the defendant pleaded guilty, pursuant to the terms of a plea agreement, to Count One (Racketeering), specifically, Racketeering Acts 17B (Murder of Castillo) and 21 (Conspiracy to Distribute Cocaine and Marijuana), of the Seventh Superseding Indictment, captioned above, before the Honorable Joseph F. Bianco, U.S. Circuit Judge, to whom this case was previously assigned.  PSR ¶ 1.  The plea agreement contains a stipulated Guidelines range of imprisonment of 262 to 327 months.

The PSR calculates the defendant's adjusted total offense level to be 39, *see* PSR ¶¶ 45-67, Sent. Rec. p. 2, and his criminal history score to be zero, *see* PSR ¶ 70.  Based on an adjusted total offense level of 39, and a Criminal History Category of I, the defendant's advisory Guidelines range is 262 to 327 months' imprisonment.  Sent. Rec. p. 2.  This calculation is identical to the stipulated Guidelines calculation contained in the plea agreement.

---

[1]      Subsequent superseding indictments were filed, including the instant Seventh Superseding Indictment, captioned above, which was filed on October 16, 2019, charging the defendant with the same crimes.

Additionally, the Government agrees with the defendant that he should receive credit for the time he served in custody in El Salvador awaiting extradition on these charges, which was 20 months and 2 weeks.  *See* Def. Ltr. p. 10.

In his letter to the Court, the defendant does not object to this calculation; but nevertheless seeks a sentence below the bottom of his Guidelines range, principally in light of his lack of criminal history, his willingness to accept responsibility promptly, and his difficult personal circumstances, particularly while living in the U.S. under the care of his godparents.

Discussion

A.      Applicable Law

The Sentencing Guidelines still provide strong guidance to the Court following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005).  Although *Booker* held that the Guidelines are no longer mandatory, it also held that district courts must "consult" the Guidelines and "take them into account" when sentencing.  543 U.S. at 264.  As the Supreme Court has explained, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range;" that "should be the starting point and the initial benchmark."  *Gall* v. *United States*, 552 U.S. 38, 49 (2007).  *See also, Kimbrough* v. *United States*, 552 U.S. 85, 101, 108 (2007).

After that calculation, a sentencing court must consider the seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); the four legitimate purposes of sentencing, *see id.* § 3553(a)(2); "the kinds of sentences available," *id.* § 3553(a)(3); the Guidelines range itself, *see id.* § 3553(a)(4); any relevant policy statement by the Sentencing Commission, *see id.* § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants," *id.* § 3553(a)(6); and "the need to provide restitution to any victims," *id.* § 3553(a)(7).  *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  18 U.S.C. § 3553(a)(2).

B.      A Guidelines-Range Sentence is Appropriate for this Defendant

In light of the sentencing factors set forth above, the Government respectfully submits that the Court should impose a sentence within the applicable Guidelines range. Although the defendant, to his credit, accepted responsibility indisputably quickly, the nature

and circumstances of this offense, among other sentencing considerations, warrant a Guidelines sentence.

As an initial matter, the defendant's conduct is extremely disturbing. At 19 ½ years old, the defendant helped to plan and execute the senseless murder of his friend, in order to gain membership in the MS-13. The defendant brought Castillo out that night, and drove with him for approximately 40 minutes, to the location where he was going to be murdered. He then showed no hesitation in hacking his friend to death with a machete. This level of execution-style brutality cannot be overstated.

Even after this brutal and senseless murder, the defendant chose not to distance himself from the MS-13. To the contrary, he continued to sell narcotics for the financial benefit of the gang, and continued his association with the MS-13 right up to the time of his arrest by immigration authorities on July 6, 2017. PSR ¶ 74.

As this Court is well aware, Long Island has been plagued by gang violence over the past two decades; especially the depraved violence perpetrated by members and associates of the MS-13. This district has seen countless MS-13 cases, wherein dozens of MS-13 members and associates have been prosecuted for violent crimes, including more than 50 murders. A sentence of imprisonment within the Guidelines range would send a strong message that violent conduct such as that engaged in by this defendant and his fellow MS-13 members and associates, including his cold-blooded execution of Castillo because he was perceived to be a rival gang member, will not be tolerated and will be met with severe consequences.

Finally, while the defendant encountered difficulties in his upbringing, notably, he had a supportive and loving family, and a childhood otherwise indistinguishable from countless other immigrants from El Salvador, who encounter similar (and often significantly more challenging) issues of separation and hardship, but who choose *not* to join the MS-13 and commit horrific acts of violence.

Conclusion

The defendant played a violent and crucial role in the Castillo murder – a senseless killing of a friend, which ensured the defendant membership in the most violent gang operating on Long Island. Nothing in his background justifies or explains such violence, and the § 3553(a) factors discussed above strongly warrant a significant sentence, to deter the defendant and other MS-13 members and would-be members from committing similar horrific acts of violence. For these reasons, the Government respectfully submits that this Court should impose a sentence on the defendant that is within the advisory Guidelines range.

Respectfully submitted,

BREON PEACE
United States Attorney

By:     /s/ *Justina L. Geraci*

Justina L. Geraci
Paul G. Scotti
Megan E. Farrell
Assistant U.S. Attorneys
(631) 715-7835/-7836/-7862

cc:    Matthew W. Brissenden, Esq. (By ECF and e-mail)
       USPO Jameka Bing (By e-mail)
       Clerk of the Court (GRB) (By ECF)