JJD:PGS/JLG/MEF
F. # 2016R01021

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                        Docket No. 16 CR 403 (S-7)(GRB)

ALEXI SAENZ and
JAIRO SAENZ,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA
IN OPPOSITION TO THE DEFENDANTS'
MOTIONS TO SUPPRESS EVIDENCE

BREON PEACE
United States Attorney
Eastern District of New York
610 Federal Plaza
Central Islip, New York 11722

Paul G. Scotti
Justina L. Geraci
Megan E. Farrell
Assistant U.S. Attorneys
    *(Of Counsel)*

PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to the joint motions of defendants Alexi Saenz, also known as "Blasty" and "Plaky" ("A. Saenz"), and Jairo Saenz, also known as "Funny" ("J. Saenz") (collectively, the "defendants" or the "Saenz Brothers"), filed on September 9, 2022 (ECF Dkt. No. 2135) (hereinafter "Def. Mot."), which seek to suppress the physical and electronic evidence obtained from their own residence and from two vehicles, pursuant to court-authorized search and seizure warrants.[1] Based on the facts and well-established Fourth Amendment law, the defendants are not entitled to the unprecedented relief they seek – that is, the wholesale suppression of nearly all of the evidence seized pursuant to these warrants – because the search warrants and searches in this case were entirely constitutional under the Fourth Amendment.  Additionally, the defendants lack standing to challenge the search of one of the vehicles, which belonged to a co-conspirator.  Therefore, for the reasons set forth herein, the defendants' suppression motions should be denied in their entirety and without an evidentiary hearing.

---

[1]     The search and seizure warrant for the premises known and described as the premises, curtilage and outbuildings of 1619 Spur Drive North, Central Islip, New York 11722, issued March 1, 2017, is hereinafter referred to as the "Saenz Premises Search Warrant."  The search and seizure warrant for the premises known and described as a dark gray 2001 Nissan Maxima, bearing New York license plate number DTT-1050, issued March 1, 2017, is hereinafter referred to as the "Chavez Vehicle Search Warrant."  The search and seizure warrant for the premises known and described as a red 2002 Mazda Protégé, bearing New York license plate number GYL-6916, issued March 1, 2017, is hereinafter referred to as the "Saenz Vehicle Search Warrant."  Finally, the affidavit submitted in support of an application for all three search warrants, which was executed by Special Agent Sean C. McMullen of the Federal Bureau of Investigation ("FBI") on March 1, 2017, is hereinafter referred to as the "Agent Affidavit."

RELEVANT BACKGROUND

A. The Charges

On March 1, 2017, a grand jury sitting in this district returned a Second Superseding Indictment, captioned United States v. Edwin Amaya-Sanchez, et al., 16-CR-403 (S-2)(JFB) (ECF Dkt. No. 50), charging the Saenz Brothers and eleven other members and associates of the violent transnational criminal organization La Mara Salvatrucha (the "MS-13") in 41 counts. The Saenz Brothers were each charged in eight of those counts, with: *(1)* racketeering, from approximately January 1, 2012 through March 1, 2017, in violation of 18 U.S.C. §§ 1962(c) and 1963 (Count One); *(2)* racketeering conspiracy, from approximately January 1, 2012 through March 1, 2017, in violation of 18 U.S.C. §§ 1962(d) and 1963 (Count Two); *(3)* conspiracy to commit murder in aid of racketeering, in approximately September 2016, in violation of 18 U.S.C. § 1959(a)(5) (Counts Thirty-Six and Thirty-Eight); *(4)* the murder of victim Kayla Cuevas in aid of racketeering, on or about September 13, 2016, in violation of 18 U.S.C. §§ 1959(a)(1) and 2 (Count Thirty-Seven); *(5)* the murder of victim Nisa Mickens in aid of racketeering, on or about September 13, 2016, in violation of 18 U.S.C. §§ 1959(a)(1) and 2 (Count Thirty-Nine); *(6)* being accessories after the fact to the perpetrators of the Cuevas and Mickens murders, on or about September 13, 2016, in violation of 18 U.S.C. § 3 (Count Forty); and *(7)* conspiracy to distribute and possess with intent to distribute marijuana, from approximately April 2016 through March 1, 2017, in violation of 21 U.S.C. §§ 841(b)(1)(D) and 846 (Count Forty-One).[2] Warrants were issued for the arrests of each of the Saenz Brothers in connection with these charges, and

---

[2] These crimes are described in detail in the Government's detention letter, dated March 2, 2017 (ECF Dkt. No. 80).

were effected on March 2, 2017, contemporaneously with the execution of the search warrants described below.

The Saenz Brothers are presently charged in a Seventh Superseding Indictment, captioned <u>United States v. Jhonny Contreras, et al.</u>, 16-CR-403 (S-7)(GRB) (ECF Dkt. No. 1170), in 36 (of the 89 total) counts, including with the murders of five more victims in aid of racketeering – namely, Michael Johnson, Oscar Acosta, Javier Castillo, Dewann Stacks, and Esteban Alvarado-Bonilla – in addition to the two previously-charged murders of victims Cuevas and Mickens.

B.  <u>The Search Warrants</u>

On March 1, 2017, the Honorable Steven I. Locke, United States Magistrate Judge for the Eastern District of New York, authorized three search and seizure warrants, stamped 17-MJ-0193, for: (1) the Saenz Brothers' residence in Central Islip, including the premises itself, the curtilage, and the outbuildings (the Saenz Premises Search Warrant); (2) a red 2002 Mazda Protégé that was owned and operated by the Saenz Brothers (the Saenz Vehicle Search Warrant); and (3) a dark grey 2001 Nissan Maxima that was owned and operated by their charged co-defendant Selvin Chavez ("Chavez") (the Chavez Vehicle Search Warrant).[3]

These warrants specifically authorized the search and seizure of the premises and the two vehicles for evidence, fruits, and instrumentalities of: racketeering, in violation of 18 U.S.C. § 1962(c); racketeering conspiracy, in violation of 18 U.S.C. § 1962(d); violent

---

[3]      The Saenz Premises Search Warrant is attached as Exhibit A to the Def. Mot.; the Chavez Vehicle Search Warrant and the Saenz Vehicle Search Warrant are attached thereto as Exhibit B; and the Agent Affidavit is attached thereto as Exhibit C.  <u>See</u> ECF Dkt. No. 2135-1.

crimes in aid of racketeering, in violation of 18 U.S.C. § 1959(a); firearms offenses, in

violation of 18 U.S.C. §§ 924(c)(1)(A)(i)-(iii) and 924(j)(1); and marijuana distribution

conspiracy, in violation of 21 U.S.C. §§ 841(b)(1)(D) and 846.  Specifically, these warrants

authorized the search and seizure of six categories of evidence related to those offenses (as

detailed in the Attachment A to each warrant):

1. Biological and/or trace evidence, including, without limitation, blood, DNA, fingerprints, hairs and fibers.

2. Cellular telephones, smart phones/devices, smart books, computers, and/or other electronic devices, including any device capable of accessing Facebook, Facebook Messenger, WhatsApp and/or WhatsApp Messenger, including, without limitation, the A. SAENZ TELEPHONE and J. SAENZ TELEPHONE.

3. Firearms, ammunition, machetes, knives, baseball bats or other weapons.

4. Speakers and music or sound equipment.

5. MS-13 paraphernalia, photographs and/or graffiti, including photographs of MS-13 members and symbols.

6. Marijuana, cocaine, United States currency, drug packaging materials, scales, lists of customers and related identifying information, ledgers containing types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions, any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information), and all bank records, checks, credit card bills, account information, and other financial records, including wire transfer receipts and records.

On March 2, 2017, all three search warrants were executed by law

enforcement, and the Saenz Brothers were arrested at the premises.  Among the items seized

were numerous cellphones and electronic devices; two machetes; a firearm, magazine, and

ammunition; a sword; a hatchet; knives (found in a closet and in the shed); articles of

clothing signifying MS-13 membership (including a blue bandana, and a hat and shirt both

bearing the acronym of the Sailors clique ("S.L.S.W.") and the image of an anchor);[4] a red devil mask; notebooks, binders, and papers, including those bearing the word "Homeboys" and the acronym of the Sailors clique; court documents and arrest paperwork for charged MS-13 member Marlon Serrano; a pillow bearing the words "MS" and "Sailor" and the image of an anchor; marijuana, a scale, and drug packaging material; and receipts from Western Union, Citibank, and Pay-O-Matic.

<u>ARGUMENT</u>

I.   <u>THE DEFENDANTS' MOTION TO SUPPRESS EVIDENCE SEIZED FROM CHAVEZ'S NISSAN MAXIMA SHOULD BE DENIED, FOR LACK OF STANDING</u>

As a threshold matter, the defendants have made no effort to establish, nor do they even bother alleging in any form or fashion, that they have standing to move to suppress evidence seized from the dark grey 2001 Nissan Maxima, which belonged to a charged co-defendant.  As such, their motion with respect to the Chavez Vehicle Search Warrant must be denied.

A.   <u>Applicable Law</u>

1.   <u>Standing to Suppress Evidence Under the Fourth Amendment</u>

"It has been clear for a generation that 'Fourth Amendment rights are personal rights . . . [that] may not be vicariously asserted.'"  <u>United States v. Haqq</u>, 278 F.3d 44, 47 (2d Cir. 2002) (quoting <u>Rakas v. Illinois</u>, 439 U.S. 128, 133-34 (1978)).  Accordingly, a defendant's Fourth Amendment rights are violated "only when the challenged conduct invaded <i>his</i> legitimate expectation of privacy rather than that of a third party."  <u>United States</u>

---

[4]   As the Agent Affidavit makes clear, the Saenz Brothers were high-ranking members of the Sailors Locos Salvatruchas Westside ("Sailors") clique of the MS-13.  <u>See</u> Def. Mot. Ex. C, p. 4.

v. Payner, 447 U.S. 727, 731 (1980) (emphasis in original); see also United States v. Villegas, 899 F.2d 1324, 1333 (2d Cir. 1990).  Ultimately, the Fourth Amendment inquiry is "whether defendant has established a legitimate expectation of privacy in the area searched." United States v. Chuang, 897 F.2d 646, 649 (2d Cir. 1990) (citing United States v. Rahme, 813 F.2d 31, 34 (2d Cir. 1987)).  This threshold question involves two separate inquiries: (i) whether a defendant has demonstrated a subjective expectation of privacy in the places and items that were searched; and (ii) whether that expectation was one that society accepts as reasonable.  Id.  While a possessory interest is not sufficient to confer Fourth Amendment standing, see, e.g., United States v. Salvucci, 448 U.S. 83, 91 (1980), it is a factor to be considered, see, e.g., Rakas, 439 U.S. at 143 n.12, and individuals without possessory interests in items to be searched are often found not to have Fourth Amendment standing, see, e.g., id. at 148 (rejecting Fourth Amendment standing where defendants did not assert property or possessory interest in automobile or in seized property).

It is the defendant's burden to establish his standing under the Fourth Amendment.  Rakas, 439 U.S. at 130, n.1 ("[T]he proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure."); see also Rawlings v. Kentucky, 448 U.S. 98, 104 (1980).  This burden "is met only by sworn evidence, in the form of affidavit or testimony, from the defendant or someone with personal knowledge."  United States v. Montoya-Eschevarria, 892 F. Supp. 104, 106 (S.D.N.Y. 1995) (citations omitted); see also United States v. Ulbricht, No. 14 Cr. 68 (KBF), 2014 WL 5090039, at *6 (S.D.N.Y. Oct. 10, 2014).

2. <u>The Defendant's Burden to Establish Disputed Material Facts Warranting an Evidentiary Hearing</u>

A defendant is entitled to a hearing on a motion to suppress only where there are disputed material facts that can only be resolved through a hearing.  <u>See</u>, <u>e.g.</u>, <u>United States v. Mottley</u>, 130 F. App'x 508, 509-10 (2d Cir. 2005); <u>United States v. Martinez</u>, 992 F. Supp. 2d 322, 325-26 (S.D.N.Y. 2014).  Ordinarily, such contested issues of fact must arise from affidavits that are based on personal knowledge.  <u>United States v. Gillette</u>, 383 F.2d 843, 848 (2d Cir. 1967) (defense counsel's affidavit insufficient to raise an issue of material fact); <u>United States v. Watson</u>, 404 F.3d 163, 167 (2d Cir. 2005) (similar); <u>United States v. Okpomo</u>, No. 09 Cr. 143, 2009 WL 1211403, at *1 (S.D.N.Y. May 5, 2009) (similar).  The defendant "bears the burden of showing the existence of disputed issues of material fact."  <u>Martinez</u>, 992 F. Supp. 2d at 326.

B. <u>Discussion</u>

The defendants have failed to meet their burden of establishing that they have standing to suppress evidence seized pursuant to the Chavez Vehicle Search Warrant.  Neither defendant has even bothered to submit a sworn declaration, in connection with their suppression motion, claiming that they have any possessory interest with respect to the Nissan Maxima or any items located therein, or any reasonable expectation of privacy in the vehicle or its contents.  Without such assertions, the defendants cannot meet their burden.  <u>See</u> <u>United States v. Dore</u>, 586 F. App'x. 42, 46 (2d Cir. 2014) (holding that defendant lacked standing to challenge a search of cellphone information where "he did not submit an affidavit establishing that the cell phones in question belonged to him or that he had a subjective expectation of privacy in them" or that he had "a privacy interest in the cell

phones in some other manner").  Thus, the defendants' motion to suppress with respect to the

Chavez Vehicle Search Warrant must be denied for lack of standing.

## II.  THE DEFENDANTS' MOTIONS TO SUPPRESS EVIDENCE SEIZED FROM THEIR RESIDENCE AND VEHICLE SHOULD BE DENIED

The defendants move to suppress evidence seized from their residence,

attacking the substance of the search warrants.  Because the search warrants are supported by

probable cause – a fact the defendants appear not to be contesting – are sufficiently

particularized, and not overbroad, their motions should be denied.

### A.  Applicable Law

The Fourth Amendment mandates that "no Warrants shall issue, but upon

probable cause, supported by Oath or affirmation, and particularly describing the place to be

searched, and the persons or things to be seized."  U.S. Const. amend. IV.  See also Fed. R.

Crim. P. 41(d)(1) and (e)(2)(A) ("After receiving an affidavit or other information, a

magistrate judge … must issue the warrant if there is probable cause to search for and seize a

person or property …"; "[T]he warrant must identify the person or property to be searched,

identify any person or property to be seized, and designate the magistrate judge to whom it

must be returned.")

"While 'probable cause is a fluid concept—turning on the assessment of

probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat

set of legal rules,' it is generally understood that 'probable cause to search is demonstrated

where the totality of circumstances indicates a 'fair probability that contraband or evidence

of a crime will be found in a particular place.'"  United States v. Elkorany, No. 20 Cr. 437

(NRB), 2021 WL 3668086, at *2 (S.D.N.Y. Aug. 17, 2021) (quoting Illinois v. Gates, 462 U.S. 213, 232 (1983); Walcyk v. Rio, 496 F.3d 139, 156 (2d Cir. 2007)).

Due to the "subjective" nature of probable cause determinations, id., [a] reviewing court must accord substantial deference to [a magistrate's finding] that probable cause exists," United States v. Wagner, 989 F.2d 69, 72 (2d Cir. 1993) (citing cases); see also United States v. Raymonda, 780 F.3d 105, 113 (2d Cir. 2015) (same) (citing cases).  Indeed, a "magistrate's finding of probable cause is itself a substantial factor tending to uphold the validity of [a] warrant"—particularly in "close cases where doubts should be resolved in favor of upholding the warrant."  United States v. Travisano, 724 F.2d 341, 345 (2d Cir. 1983) (citing cases).  "'[W]here [the] circumstances are detailed . . . and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner . . . . [T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.'"  Rivera v. United States, 928 F.2d 592, 602 (2d Cir. 1991) (quoting United States v. Ventresca, 380 U.S. 102, 109 (1965)).  "The reviewing court's determination should be limited to whether the issuing judicial officer had a substantial basis for the finding of probable cause."  Wagner, 989 F.2d at 72; Raymonda, 780 F.3d at 113.

In addition to its probable cause requirement, the Fourth Amendment requires particularity—that is, a description of "the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  The particularity requirement protects against a "general, exploratory rummaging in a person's belongings," Andresen v. Maryland, 427 U.S. 463, 480 (1976), and "virtually unfettered discretion to seize anything they see,'" United States v. Purcell, No. 18 Cr. 81 (DLC), 2018 WL 4378453, at *2 (S.D.N.Y. Sept. 13, 2018),

aff'd, 967 F.3d 159 (2d Cir. 2020) (quoting United States v. Mankani, 738 F.2d 538, 546 (2d Cir. 1984)).  "To be sufficiently particular under the Fourth Amendment, a warrant must": (i) "identify the specific offense" for which probable cause has been established; (ii) "describe the place to be searched"; and (iii) "specify the items to be seized by their relation to designated crimes."  Purcell, 2018 WL 4378453, at *2 (quoting United States v. Ulbricht, 858 F.3d 71, 99 (2d Cir. 2017)).  See also United States v. Jacobson, 4 F. Supp. 3d 515, 521-22 (E.D.N.Y. 2014) (discussing the "three components" to the particularity requirement).

        "The Fourth Amendment does not require a perfect description of the data to be searched and seized."  Ulbricht, 858 F.3d at 100.  Rather, the particularity requirement is satisfied if the warrant, including its attachments, enables the executing officer to ascertain and identify with reasonable certainty those items that the magistrate judge has authorized him or her to seize.  See Groh v. Ramirez, 540 U.S. 551, 557-59 (2004); United States v. Rosa, 626 F.3d 56, 58 (2d Cir. 2010).  "Courts may tolerate some ambiguity in the warrant so long as law enforcement agents have done the best that could reasonably be expected under the circumstances, have acquired all the descriptive facts which a reasonable investigation could be expected to cover, and have insured that all those facts were included in the warrant."  United States v. Galpin, 720 F.3d 436, 446 (2d Cir. 2013) (internal quotation marks and citation omitted).  Indeed, warrants that authorize "the seizure of any and all evidence of specified crimes, including but not limited to illustrative categories of documents and records are often found to be proper.  Courts routinely validate such warrants in the face of particularity challenges, reasoning that an illustrative list, coupled with a reference to the crimes for which evidence is sought, supplies sufficiently limiting guidance."  United States v. Hadden, No. 20 Cr. 468 (RMB), 2022 WL 1409600, at *4 (S.D.N.Y., May 4, 2002)

(citation omitted).  See, e.g., United States v. Riley, 906 F.2d 841, 844–45 (2d Cir. 1990); United States v. Young, 745 F.2d 733, 759–60 (2d Cir. 1984), cert. denied, 470 U.S. 1084 (1985); United States v. Lustyik, 57 F. Supp. 3d 213, 227–28 (S.D.N.Y. 2014) (opining that warrant permitting seizure of all "evidence, fruits, or instrumentalities" of specified crimes was sufficiently particular because it contained "an illustrative list of items to be seized," even though illustrative list was preceded by phrase "including but not limited to" (internal quotation marks omitted)); United States v. Jacobson, 4 F. Supp. 3d 515, 524–25 (E.D.N.Y. 2014) (upholding warrant for "[a]ny and all records, data and correspondence constituting evidence, fruits and instrumentalities of" specified crimes, "in any form wherever that they may be stored or found including, but not limited to" specified categories).

Additionally, "[t]he degree to which a warrant must state its terms with particularity varies inversely with the complexity of the criminal activity investigated." United States v. Cioffi, 668 F. Supp. 2d 385, 391 (E.D.N.Y. 2009) (quoting United States v. Regan, 706 F. Supp. 2d 1102, 1113 (S.D.N.Y. 1989)).  "The type of evidence sought is also relevant; in particular, courts have recognized that documentary evidence may be difficult to describe *ex ante* with the same particularity as a murder weapon or stolen property."  Id. (citing cases); see also United States v. Scully, 108 F. Supp. 3d 59, 65-66 (E.D.N.Y. 2015) ("The level of specificity required by the Fourth Amendment depends on many factors, including the nature of the crime, and where complex financial crimes are alleged, a warrant properly provides more flexibility to the searching agents." (internal quotation marks and citation omitted)).  Further, "it is important to bear in mind that a search warrant does not necessarily lack particularity simply because it is broad."  Ulbricht, 858 F.3d at 100.  In fact, "searches of computers may sometimes need to be as broad as searches of residences

11

pursuant to warrants."  Id.  "And, in many cases, the volume of records properly subject to

seizure because of their evidentiary value may be vast.  None of these consequences

necessarily turns a search warrant into a prohibited general warrant."  Id.

       The probable cause and particularity requirements intersect with the doctrine

of overbreadth.  "While particularity focuses on whether the warrant provides the necessary

guidelines for the search by the executing officers, the requirement that a warrant not be

overbroad focuses on whether the government lacked probable cause to search and seize the

listed items."  Elkorany, 2021 WL 3668086, at *4 (citing United States v. Hernandez, No. 09

Cr. 625 (HB), 2010 WL 26544, at *7 (S.D.N.Y. Jan. 6, 2010)).  "[A] warrant is overbroad if

its 'description of the objections to be seized . . . is broader than can be justified by the

probable cause upon which the warrant is based.'"  United States v. Lustyik, 57 F. Supp. 3d

213, 228 (S.D.N.Y. 2014) (quoting Galpin, 720 F.3d at 446).  Naturally, the broader the

duration or complexity of the crimes under investigation, the broader the categories of

documents and records that may properly be seized.  See, e.g., United States v. Levy, No. S5

11 Cr. 62 (PAC), 2013 WL 664712, at *8 (S.D.N.Y. 2013) (broad warrant with no timeframe

limitation was justified by breadth and complexity of fraud described in underlying

affidavit); United States v. Jacobson, 4 F. Supp. 3d 515, 522 (E.D.N.Y. 2014) (breadth of

warrant was justified because "the crimes under investigation were complex and concerned a

long period of time, not simply one or two dates of criminal activity"); United States

v. Dupree, 781 F. Supp. 2d 116, 149 (E.D.N.Y. 2011) ("The nature of the crime . . . may require

a broad search . . . .").

       Finally, suppression of evidence is a "last resort," not a "first impulse," even if

a warrant contains defects.  United States v. Purcell, 967 F.3d 159, 179 (2d Cir. 2020)

(quoting <u>Hudson v. Michigan</u>, 547 U.S. 586, 591 (2006)).  "'To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.'"  <u>Id.</u> (quoting <u>Herring v. United States</u>, 555 U.S. 135, 144 (2009)).  "The Supreme Court has held that the exclusion of evidence is inappropriate when the Government acts in 'objectively reasonable reliance' on a search warrant, even if that warrant is later deemed invalid.  <u>Purcell</u>, 2018 WL 4378453, at *3 (quoting <u>United States v. Leon</u>, 468 U.S. 897, 922 (1984); citing <u>Ganias</u>, 824 F.3d at 221).  There are four circumstances in which the good faith exception to the exclusionary rule does not apply: (i) when the magistrate has been "knowingly misled"; (ii) where the magistrate "wholly abandoned his or her judicial role"; (iii) "where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable;" and (iv) "where the warrant is so facially deficient that reliance upon it is unreasonable."  <u>Id.</u> (quoting <u>Galpin</u>, 720 F.3d at 452).  The good faith analysis is an objective analysis of whether "a reasonably well trained officer would have known that the search was illegal in light of all the circumstances."  <u>Rosa</u>, 626 F.3d at 64 (citation omitted).  "Searches pursuant to a warrant will," however, "rarely require any deep inquiry into reasonableness."  <u>United States v. Clark</u>, 638 F.3d 89, 100 (2d Cir. 2011) (citation omitted).  "[A] warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search."  <u>Id.</u> (citation omitted).

B. <u>Discussion</u>

1. <u>The Search Warrants Were Sufficiently Particularized and the Categories of Evidence Were Supported by Probable Cause</u>

The three search warrants at issue here[5] were sufficiently particularized because they: (i) "identif[ied] the specific offense[s]" for which there was probable cause; (ii) "describe[d] the place to be searched;" and (iii) "specif[ied] the items to be seized by their relation to the designated crimes." <u>Ulbricht</u>, 858 F.3d at 99.  The defendants' line-by-line challenges to the six categories of evidence listed in Attachment A to each of the warrants is wholly unavailing.  The warrants explicitly listed the subject offenses and the specific kinds of items to be seized as evidence, fruits, and instrumentalities of those subject offenses; and each of the six categories of evidence was supported by probable cause, as described in the Agent Affidavit.

*First*, the warrants specified the federal offenses for which there was probable cause.  <u>See</u> Def. Mot. Exs. A and B, Attachment A ("All of which constitute evidence, fruits and instrumentalities of racketeering, racketeering conspiracy, violent crimes in aid of racketeering, and related firearms offenses, in violation of 18 U.S.C. §§ 1962(c), 1962(d), 1959(a), 924(c)(1)(A)(i)-(iii) and 924(j)(1), and a conspiracy to distribute marijuana, in violation of 21 U.S.C. §§ 841(b)(1)(D) and 846.").  That satisfies the first prong of the particularity requirement.  <u>Ulbricht</u>, 858 F.3d at 99.  The defendants seek to impose an additional requirement to particularity: to further specify and define the racketeering acts

---

[5]     The arguments herein apply equally to the Chavez Vehicle Search Warrant, which was also addressed above.

which constitute the racketeering offenses within the warrant itself.  Def. Mot. 11-12.[6]  But the Government is not aware of any case in which a court has imposed such a requirement— nor have the defendants identified one.  Indeed, the Government is unaware of any cases in which a search warrant has listed each predicate act of racketeering, rather than listing the subject offense of racketeering.

*Second*, each of the six categories of evidence that the defendants challenge was listed in the warrants, in relation to the subject offenses of racketeering, racketeering conspiracy, violent crimes in aid of racketeering, related firearms offenses, and conspiracy to distribute marijuana, noted above.

Specifically, Judge Locke found that there was probable cause to search for and seize item #1 – "[b]iological and/or trace evidence, including … blood, DNA, fingerprints, hairs and fibers" – from the defendants' residence and vehicle, because this evidence relates to the defendants' participation in the charged murders in aid of racketeering, discussed above, as well as in other violent crimes in aid of racketeering (including additional murders and attempted murders, which are explicitly described in the Agent Affidavit) for which the defendants were, at the time, being investigated.  See Def. Mot. Ex. C (Agent Aff.), pp. 10-20 (detailing an attempted murder on Apple Street, the Bohannon murder, the Cuevas and Mickens murders, the Stacks murder, the Alvarado-Bonilla murder, and the marijuana distribution conspiracy).  The agent affidavit also makes clear that, following the commission of certain of these violent crimes, the defendants and their fellow MS-13 members drove together in vehicles and gathered at the premises, where

---

[6]     The Agent Affidavit did, in fact, describe specific racketeering acts in detail – both those charged, as well as those acts still under investigation at the time.

weapons were stored or buried, and where bloody clothing was worn.  See, e.g., Ex. C (Agent Aff.), at pp. 11, 12, 15, 16.  The fact that other individuals, aside from the defendants, also resided at the premises is irrelevant (Def. Mot. 6).  Probable cause was clearly established that the premises was used by the defendants and other MS-13 members as a meeting and gathering place in connection with their involvement in racketeering activities and their engagement in violent crimes in aid of racketeering.  There is simply nothing ambiguous about this category of evidence, and the defendants' motion should be denied.[7]

Additionally, there was probable cause to search for and seize item #2 – cellular telephones and other electronic devices, including those belonging to the defendants themselves – from the defendants' residence and vehicle.  As the Agent Affidavit made clear, the defendants and their fellow MS-13 members regularly communicated via cellphone, email, text-messaging, and by the use of messaging applications or social media messaging. See, e.g., Ex. C (Agent Aff.) at pp. 7, 14.  Numerous cellphones and electronic devices were seized pursuant to these warrants,[8] and were searched pursuant to a subsequent search and

---

[7]     The non-controlling First Circuit case cited by the defendants also does not hold otherwise.  United States v. Burgos-Montes, 786 F.3d 92, 108 (1st Cir. 2015) (reviewing the phrase "evidence and trace evidence" for particularity, the Court noted that "this is a situation in which the 'circumstances of the crime make an exact description of the fruits and instrumentalities a virtual impossibility.  In such cases, 'the searching officer can only be expected to describe the generic class of items he is seeking.'" (citations omitted)).

[8]     This is standard.  "[O]nce the Government established probable cause to the satisfaction of the magistrate that electronic media at the [ ] Premises would likely contain evidence, fruits, or instrumentalities of the subject offenses, the magistrate was authorized to permit the Government to seize the electronic media for later review at FBI headquarters. A contrary conclusion would be perverse. It would either preclude the agents from seizing the media at all or, more likely, require them to remain at the premises being searched while they methodically reviewed each of the items of electronic media, effecting an even greater intrusion on the occupant's privacy."  United States v. Ray, 541 F.Supp.3d 355, 393 (S.D.N.Y. 2021).

seizure warrant (Def. Mot. Exs. D and E).  Importantly, the law enforcement personnel executing the Saenz Premises Search Warrant exercised care to try to identify on site, including by interviewing other individuals occupying certain rooms of the premises, which of the electronic devices had belonged to or been used by the defendants, or presently belonged to or were used by the defendants or other MS-13 members.  The agents did *not* seize electronic devices that they believed had been exclusively used by persons living in the residence other than the defendants.  The defendants, moreover, have not represented that any of the cellphones or electronic devices seized were not, in fact, used by the defendants. See Def. Mot. 8.  Accordingly, the defendants' suppression arguments with respect to this category of evidence are moot at this time.

The defendants then claim that item # 3 – "[f]irearms, ammunition, machetes, knives, baseball bats or other weapons" – is impermissibly broad.  As the Agent Affidavit made clear, numerous kinds of weapons were not only used in connection with each of the violent acts committed by the defendants (described above), but weapons were also maintained by the MS-13 in their arsenal, for use as needed in gang business, and that such weapons are generally stored in their residences and vehicles.  See Ex. C (Agent Aff.), p. 6 ("[i]n order to pursue the purposes, means, and methods of the enterprise, members of the MS-13 maintain arsenals of weapons, including firearms, ammunition, machetes, knives, baseball bats, and other weapons.").  The Agent Affidavit also made clear that a host of weapons were stored, hidden, and even buried at the premises.  E.g., Ex. C (Agent Aff.) at pp. 11, 12-13, 15, 16.  Moreover, the shed of the premises was, as is made clear in the Agent Affidavit, heavily used by the defendants for MS-13 activity; therefore, the location of certain weapons (including a sword, knives, and a hammer) was of particular significance.

17

There is nothing overbroad about this category of evidence, and accordingly, the defendants' suppression arguments should be denied.

The defendants further claim that item # 4 – "[s]peakers and music or sound equipment" – is ambiguous, as it relates to the Saenz Premises Search Warrant.  As the probable cause in the Agent Affidavit made clear, these items were believed to be located in the shed on the premises, and came into direct contact with an article of bloody clothing following the Cuevas and Mickens murders.  Def. Mot. Ex. C (Agent Aff.) at p. 15.[9] Although the defendants correctly state that the Saenz Premises Search Warrant authorizes the seizure of all speakers and sound equipment anywhere on the premises, without limitation to a specific area of the property (namely, the shed), see Def. Mot. 7, the fact is, these items were seized by law enforcement *only* from the shed.[10]  There is nothing ambiguous about this category of evidence, and accordingly, the defendants' suppression argument should be denied.

The defendants, surprisingly, also take issue with item #5 – "MS-13 paraphernalia, photographs and/or graffiti, including photographs of MS-13 members and symbols" – claiming that the meaning of these common-language words in unclear, and further, that these items are not described and detailed sufficiently.  Def. Mot. 9.[11]  The

---

[9]     The affidavit also makes clear that biological and/or trace evidence may remain on an object or in a location for years.  See Ex. C, p. 15.

[10]     However, even if this were not the case, this category of evidence was supported by probable cause, and, because speakers and sound equipment are movable objects, although they were at one point located in the shed, they could easily have been moved to another part of the premises or to a vehicle.

[11]     The Agent Affidavit provides examples.  See Ex. C, p. 6.

Government has been unable to locate any caselaw which suggests that words such as "paraphernalia" and "graffiti" in search warrants is ambiguous, and indeed, the defendants have cited none.  In fact, a majority of the MS-13 paraphernalia seized pursuant to the search warrant contained facially obvious references to the gang – including the words "MS" and the acronym for the Sailors clique.  There is nothing unclear about this category of evidence. The defendants' suppression arguments should be denied.

Finally, the defendants claim that item # 6 – relating to the defendants' narcotics trafficking activities, including financial records and ledgers relating to the same – is not sufficient particularized or narrow in scope.  Def. Mot. 9-10.  As the Agent Affidavit in support of the warrants makes clear, the defendants provided marijuana to lower-level MS-13 members for resale, and collected the proceeds of these sales, which were then used for the financial benefit of the MS-13, including to wire money to leaders in El Salvador.  Ex. C (Agent Aff.) pp. 19-20.  As further alleged, drugs and drug proceeds were stored at the premises; the defendants' vehicle was used to meet sources of supply; and marijuana sales even occurred at the premises.  Id. at p. 20.  The Government is aware of no authority that suggests that specific financial records must be listed in a warrant; in fact, it appears to be quite the opposite.  See, e.g., United States v. Regan, 706 F. Supp. 1102, 1114 (S.D.N.Y. 1989) ("requiring the executing agents to separate evidence of legal [financial] transactions from evidence of illegal [financial] transactions, by limiting the terms of the warrants only to those materials involving the latter (as defendants argue should have been done), would have been impractical … If the search warrant had required the executing agents to first determine whether the seized materials related to one of the suspected criminal activities or could conceivably have assisted in proving one of the suspected criminal activities, they would

probably still be on the premises now."); United States v. Wuagneux, 683 F.2d 1343, 1352 (11th Cir. 1982); United States v. Heldt, 668 F.2d 1238, 1254 (D.C.Cir. 1981).  See also United States v. Blumberg, No. 3:97–CR–119 (EBB), 1998 WL 136174, *7 (D.Conn. Mar. 11, 1998) (lack of time frame for documents in warrant did not render warrant overbroad, where alleged criminal scheme was complex and of long duration, and where law enforcement agents could not identify the business records implicated with any more specificity).  Indeed, our Circuit and other Courts of Appeals have upheld warrants specifying broad categories of documents similar to those identified here.  United States v. Riley, 906 F.2d 841, 844 (2d Cir. 1990) ("In upholding broadly worded categories of items available for seizure, we have noted that the language of a warrant is to be construed in light of an illustrative list of seizable items.") (citations omitted); United States v. Kail, 804 F.2d 441, 444–45 (8th Cir. 1986) (approving seizure of "accounting ledgers, checkbooks, monthly statements, ... customer files, client lists, letters and mailings from clients ...."); Shaffer v. Wilson, 523 F.2d 175, 180 (10th Cir. 1975) ("fiscal records relating to [defendant's] income and expenses").  There is nothing overbroad about this category of evidence, and accordingly, the defendants' suppression arguments should be denied.

In sum, the defendants' challenge to the search warrants are without merit.  Each warrant identifies with particularity the items to be seized and ties those items to the crimes as to which the Agent Affidavit provides probable cause.  The face of the warrants limit the agents to seize the items listed in the six categories of Attachment A only if they are related to the listed offenses, which are noted by both name and citation.  There can be no legitimate particularity challenge to those items.  Each links the evidence to the criminal activity supported by probable cause.  The defendants' motion to suppress fails.

2.   <u>The Good Faith Exception Applies and a Hearing is Not Warranted</u>

Even were the Court to find a defect in the warrants, suppression here would not be appropriate under the good faith exception and longstanding Supreme Court precedent.  The Government acted in "objectively reasonable reliance" on the premises and vehicle warrants.  <u>Purcell</u>, 2018 WL 4378453, at *2-3 (quoting <u>Leon</u>, 468 U.S. at 922).  None of the four circumstances negating the good faith exception are applicable: (i) Judge Locke was not knowingly misled; (ii) Judge Locke did not "wholly abandon[]" his judicial role; (iii) the application for the warrants was not "so lacking in indicia of probable cause as to render reliance upon it unreasonable;"[12] and (iv) the warrants were not "so facially deficient that reliance upon [them] was unreasonable."  <u>Id.</u> (quoting <u>Galpin</u>, 720 F.3d at 452).

The defendants do not argue the applicability of the first three circumstances, but rely solely on the fourth.  <u>See</u> Def. Mot. 12.  However, as discussed below, a "reasonably well trained officer would [not] have known that the search was illegal in light of all of the circumstances."  <u>Rosa</u>, 626 F.3d at 64.

In an unsuccessful attempt to avoid the well-established precedent of <u>Leon</u> and its progeny, the defendants repeat their earlier argument, claiming that because the warrants were overbroad and insufficiently particularized, <u>see</u> <u>supra</u>, a reasonable officer would have recognized their invalidity.  Def. Mot. 13.  For the reasons set forth above, the search warrants were neither overbroad nor insufficiently particularized.  <u>See</u> <u>United States v. Nejad</u>, 436 F.Supp.3d 707, 732 (S.D.N.Y. 2020) ("[W]here there is no clearly established

---

[12]   In fact, the defendants do not challenge the warrants on probable cause grounds, as noted above.

law establishing a warrant's invalidity, reliance on it cannot be said to be objectively unreasonable for purposes of the good-faith inquiry."); United States v. Jacobson, 4 F. Supp. 3d 515, 522 (E.D.N.Y. 2014) ("courts must be 'mindful that, in *Leon*, the Supreme Court strongly signaled that most searches conducted pursuant to a warrant would likely fall within its protection"; and "[m]ost searches will be upheld." (citations omitted)).  Additionally, the defendants suggest that the Agent Affidavit in support of the warrants should have been attached to, or incorporated into, the warrants themselves, to cure this alleged deficiency. Def. Mot. 13.  That level of factual detail is highly unnecessary here, where the warrants, on their face, list the specific crimes to which six explicit categories of items relate.  "To be sure, the Constitution further requires that warrants be issued only 'upon probable cause,' but it does not require that probable cause be stated in the warrant itself."  United States v. Clark, 638 F.3d 89, 103 (2d Cir. 2011).  See also United States v. Liu, 239 F.3d 138, 140 (2d Cir. 2000) ("A warrant must be sufficiently specific to permit the *rational exercise of judgment* [by the executing officers] in selecting what items to seize." (internal quotation marks omitted) (emphasis added) (alteration in original)).  Incorporating the probable cause affidavit is simply not a requirement, either constitutionally or pursuant to Rule 41 of Federal Rules of Criminal Procedure.

The defendants cite heavily to United States v. George, 975 F.2d 72, 75 (2d Cir. 1992), which is inapplicable here.  Unlike the search warrant suppressed in the *George* case, there is no broad catch-all phrase present in any of the warrants here.  See United States v. George, 975 F.2d 72, 75 (2d Cir. 1992) ("The instant warrant's broad authorization to search for 'any other evidence relating to the commission of a crime' plainly is not sufficiently particular with respect to the things to be seized because it effectively granted the

executing officers' 'virtually unfettered discretion to seize anything they [saw].'").  Rather, by contrast, the warrants at issue here authorized the search for particular information and not just "any evidence" related to the commission of the crimes in question.  "To that end, in addition to listing the various criminal statutes at issue, the warrants described the particular types of property to be seized."  United States v. Gotti, 42 F.Supp.2d 252, 274 (S.D.N.Y. 1999) (distinguishing George).  See also United States v. Cohan, 628 F.Supp.2d 355, 361 (E.D.N.Y. 2009) (distinguishing George; holding that, "while the warrant embraces a large amount of material, 'nothing is left to the discretion of the officer executing the warrant,' and the warrant, therefore, is not insufficiently particular." (citations omitted) (collecting cases)).

Accordingly, even if the warrants here were defective in some respect, the good faith exception would render suppression inappropriate.

CONCLUSION

For the foregoing reasons, the Court should deny the defendants' suppression motions in their entirety without a hearing.

Dated:    Central Islip, New York
          November 8, 2022

                                        BREON PEACE
                                        United States Attorney
                                        Eastern District of New York
                                        610 Federal Plaza
                                        Central Islip, New York 11722


                              By:    /s/ Paul G. Scotti_____
                                     Paul G. Scotti
                                     Justina L. Geraci
                                     Megan E. Farrell
                                     Assistant United States Attorneys
                                     (631) 715-7900

23