FILED
CLERK

10:51 am, Dec 15, 2022

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X
                              :
UNITED STATES OF AMERICA,      :
                              :    16-CR-403-25 (GRB)
        v.                     :
                              :    October 7, 2021
EVER FLORES,                   :
                              :    Central Islip, NY
            Defendant.         :
                              :
------------------------------X


        TRANSCRIPT OF CRIMINAL CAUSE FOR GUILTY PLEA
                BEFORE THE HONORABLE
        VISITING UNITED STATES CIRCUIT JUDGE
                JOSEPH F. BIANCO

APPEARANCES:

For the Government:          BREON PEACE, ESQ.
                             U.S. ATTORNEY
                             BY: JUSTINA GERACI, ESQ.
                             ASSISTANT U.S. ATTORNEY
                             271 Cadman Plaza East
                             Brooklyn, New York 11201


For the Defendant:           SUSAN MARCUS, ESQ.
                             29 Broadway, Suite 1412
                             New York, NY 10006




Court Transcriber:           ARIA SERVICES, INC.
                             c/o Elizabeth Barron
                             274 Hovey Road
                             Milo, ME 04463
                             Aria@leinen.net




Proceedings recorded by electronic sound recording,
transcript produced by transcription service

```
 1              THE CLERK:  Criminal cause for guilty plea
 2    in 16-CR-403, United States of America v. Ever Flores.
 3              Counsel, please state your appearances for
 4    the record.
 5              MS. GERACI:  Good afternoon, your Honor.
 6    Justina Geraci and Megan Farrell for the government.
 7              THE COURT:  Good afternoon.
 8              MS. MARCUS:  Good afternoon.  Susan Marcus
 9    on behalf of Ever Flores.
10              THE COURT:  Good afternoon, Ms. Marcus.
11              Mr. Flores is present.  We have the Spanish
12    interpreter who is on staff here interpreting for Mr.
13    Flores.  I would just ask that she identify herself for
14    the record.
15              THE INTERPRETER:  Good afternoon, your
16    Honor.  Maya Gray, Spanish interpreter.
17              THE COURT:  Good afternoon, Ms. Gray.
18              Ms. Marcus, my understanding is that your
19    client has an application today?
20              MS. MARCUS:  Yes.  He wishes to withdraw his
21    previously-entered plea of not guilty and enter a plea
22    of guilty today.
23              THE COURT:  To Count 1 of superseding
24    indictment S-7?
25              MS. MARCUS:  Yes.
```

1          THE COURT:  And to racketeering acts,

2    specifically 18(b) and 21?

3          MS. MARCUS:  Yes.

4          THE COURT:  Is that correct, Mr. Flores?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Hold on one second.  Okay, Mr.

7    Flores, before I can accept your guilty plea, I'm going

8    to ask you a series of questions so that I can

9    establish to my satisfaction that you wish to plead

10   guilty today because you are guilty and not for some

11   other reason.  I also need to establish that you know

12   what rights you're giving up by pleading guilty, so I'm

13   going to ask you a series of questions.  If you don't

14   understand one of my questions, let me know and I'll

15   rephrase it.  If you're having trouble understanding

16   through the interpreter at any point, raise your hand

17   right away and we'll fix that, or if you want to speak

18   to Ms. Marcus at any time for any reason, let me know

19   and I'll give you as much time as you need to speak to

20   her, okay?

21          THE DEFENDANT:  I agree.

22          (Defendant is sworn.)

23          THE COURT:  You can be seated.  Having been

24   sworn, Mr. Flores, your answers to my questions will be

25   subject to the penalties of perjury or of making a

1    false statement if you do not answer truthfully.

2              Do you understand that?

3              THE DEFENDANT:  Yes, I understand.

4              THE COURT:  Can you state your full name for

5    the record?

6              THE DEFENDANT:  Ever Flores.

7              THE COURT:  How old are you, Mr. Flores?

8              THE DEFENDANT:  26 years old.

9              THE COURT:  What's your date of birth?

10             THE DEFENDANT:  31st of December, '94.

11             THE COURT:  How far did you go in school?

12             THE DEFENDANT:  I finished twelfth grade.

13             THE COURT:  Are you now or have you recently

14   been under the care of a doctor or psychiatrist?

15             THE DEFENDANT:  No.

16             THE COURT:  Have you ever been hospitalized

17   or treated for any mental illness or any type of

18   addiction, including drug or alcohol addiction?

19             THE DEFENDANT:  No.

20             THE COURT:  Have you taken any drugs,

21   medicine, or pills, or any alcoholic beverages in the

22   last 48 hours?

23             THE DEFENDANT:  No.

24             THE COURT:  Is your mind clear today?

25             THE DEFENDANT:  Yes.

1              THE COURT:  Do you understand what you're

2    about to do today?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Do either counsel have any doubt

5    as to the defendant's competence to plead at this time?

6              MS. GERACI:  No, your Honor.

7              MS. MARCUS:  No, your Honor.

8              THE COURT:  On the basis of Mr. Flores'

9    responses to my questions today as well as my

10   observations of his demeanor here in the courtroom and

11   the representations of counsel, I find that he is fully

12   competent to enter an informed plea at this time.

13             Mr. Flores, have you had sufficient time to

14   discuss this case with your attorney, including any

15   possible defenses that you might have to this charge

16   that you're pleading guilty to?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Are you satisfied with your

19   attorney's representation of you in this case?

20             THE DEFENDANT:  Yes.

21             THE COURT:  I am now going to describe to

22   you certain rights that you have under the Constitution

23   and laws of the United States.  You're giving up these

24   rights today by pleading guilty, so please listen

25   carefully.

1          At a trial -- excuse me.  Under the

2    Constitution and laws of the United States, you're

3    entitled to a speedy and public trial by a jury on the

4    charges contained in superseding indictment S-7.

5          Do you understand that?

6          THE DEFENDANT:  Yes.

7          THE COURT:  At the trial, you would be

8    presumed to be innocent.  The government would have the

9    burden of proof and the government would be required to

10   prove your guilt by competent evidence beyond a

11   reasonable doubt before you could be found guilty.

12         Do you understand that?

13         THE DEFENDANT:  Yes.

14         THE COURT:  A jury of 12 people would have

15   to agree unanimously that you were guilty and you would

16   not have to prove that you were innocent if you were to

17   go to trial.

18         Do you understand that?

19         THE DEFENDANT:  Yes.

20         THE COURT:  At that trial and at every stage

21   of your case, you would be entitled to be represented

22   by a lawyer.  If you could not afford a lawyer, one

23   would be appointed at public expense free of cost to

24   represent you at each and every stage of the criminal

25   proceeding.

1          Do you understand that?

2          THE DEFENDANT:  Yes.

3          THE COURT:  During the trial, the witnesses

4   for the government would have to come to the courtroom

5   and testify in your presence.  Your lawyer could cross-

6   examine the witnesses for the government, your lawyer

7   could object to evidence offered by the government, and

8   your lawyer could offer evidence on your own behalf, if

9   you so desired.  In connection with offering your own

10  evidence, you would have the right to have subpoena

11  issues or other processes used to compel witnesses to

12  come to court and to testify in your defense.

13         Do you understand that?

14         THE DEFENDANT:  Yes.

15         THE COURT:  At the trial, although you would

16  have the constitutional right to testify if you chose

17  to do so, you would also have the constitutional right

18  not to testify.  If you decided not to testify, no one,

19  including the jury, could draw any adverse inference or

20  suggestion of guilt from the fact that you did not

21  testify.

22         Do you understand that?

23         THE DEFENDANT:  Yes.

24         THE COURT:  If you're convicted at a trial,

25  you would have the right to appeal the jury's verdict.

```
1                  Do you understand that?

2                  THE DEFENDANT:  Yes.

3                  THE COURT:  Even now, as you're offering to

4    enter this guilty plea, you have the right to change

5    your mind, continue with your plea of not guilty, and

6    go to trial on the charges against you in the

7    indictment.

8                  Do you understand that?

9                  THE DEFENDANT:  Yes.

10                 THE COURT:  If you plead guilty and if I

11   accept your plea, you will give up your right to a

12   trial and all the other rights that I've just discussed

13   with you, other than your right to an attorney because

14   obviously, you have the right to an attorney regardless

15   of whether or not you plead guilty.  But I want to make

16   sure you understand that once you plead guilty, there

17   will be no trial, and I will enter a judgment of

18   guilty, and the Court will sentence you on the basis of

19   your guilty plea, after it has considered what's called

20   a presentence report and whatever submission the Court

21   receives from your lawyer and from the government, both

22   in writing and orally, at the time of your sentencing.

23   There will also be no appeal to the higher court on the

24   question of whether you did or did not commit the crime

25   you're pleading guilty to.
```

1           Do you understand that?

2           THE DEFENDANT:  Yes, I understand.

3           THE COURT:  If you plead guilty, you will

4    also have to give up your right not to incriminate

5    yourself because in a few minutes, I'm going to ask you

6    questions about what you did in order to satisfy myself

7    that you are guilty as charged, and you will have to

8    admit and acknowledge your guilt under oath.

9           Do you understand that?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Mr. Flores, are you willing to

12   give up your right to a trial and the other rights I've

13   just discussed with you?

14          THE DEFENDANT:  Yes.

15          THE COURT:  I'm now just going to -- I know

16   you've gone over the indictment and the charges that

17   you're pleading guilty to today with Ms. Marcus, but

18   I'm just going to give you a summary of the charge that

19   you're pleading guilty to, to make sure you understand.

20          As you know, Count 1 charges you with

21   participating in the racketeering activities of the MS-

22   13 gang through a pattern of racketeering.

23   Specifically for purposes of your plea here today, it

24   charges you with racketeering acts 18(b), the murder of

25   Dewan Stacks (ph) on October 13th, 2016, and

1   racketeering act 21, which charges you with

2   participating in a conspiracy to distribute marijuana

3   and cocaine between April of 2016 and October of 2017,

4   on behalf of the gang.

5           Do you understand in summary, that's what

6   you're charged with in Count 1?

7           THE DEFENDANT:  Yes.

8           THE COURT:  I will now summarize the

9   elements of that crime that the government would have

10  to prove to a jury beyond a reasonable doubt before you

11  could be found guilty.  Obviously, you're giving up

12  your right to have them prove these things to the grand

13  jury, so I just want to make sure you understand what

14  they would otherwise have to prove.

15          First, they would have to prove that the

16  racketeering enterprise existed in this case, that the

17  MS-13 gang existed.  They would have to prove that that

18  gang is involved in racketeering activity, which

19  includes murder, attempted murder, and similar acts.

20  They would have to prove that that enterprise affected

21  interstate or foreign commerce in some way.  Next, they

22  would have to prove that you knowingly became a member

23  of that enterprise.

24          Next, they would have to prove that you

25  knowingly participated in the operation of the

1   activity, the racketeering activity of that enterprise.

2   Next, they would have to prove that you did so through

3   what's called a pattern of racketeering.  Under federal

4   law, they have to establish that you participated in a

5   pattern of racketeering.

6           To prove that, they would have to show at a

7   minimum at least two separate racketeering acts that

8   you were involved in, in furtherance of the gang's

9   activities.  For each racketeering act, they have to

10  prove all of the elements of that act to the jury

11  beyond a reasonable doubt.  So in your situation, they

12  would have to first prove the elements under New York

13  Penal Law.  They would have to prove that on October

14  13th, 2016, you with the intent to cause the death of

15  another person, specifically Mr. Stacks, knowingly and

16  intentionally caused his death, in violation of New

17  York Penal Law Sections 125.25(1) and Section 20.  Let

18  me just read those statutes, those laws to you.

19  They're very short and very clear.

20          The murder statute under New York Law

21  states, "A person is guilty of murder in the second

22  degree when, with the intent to cause the death of

23  another persons, he causes the death of such person or

24  of a third person."

25          They charge you under Section 20 of the New

1    York Penal Law, which is aiding and abetting in a

2    murder.  That states, "When one person engages in

3    conduct which constitutes an offense, in this case

4    murder, another person is criminally liable for such

5    conduct when acting with the mental culpability

6    required for the commission of the murder, he solicits,

7    requests, commands, importunes, or intentionally aids

8    such person to engage in such conduct."

9              So they would have to prove these elements

10   of murder beyond a reasonable doubt to the jury for you

11   to be found guilty of that racketeering act.  Then they

12   would have to separately prove the elements of

13   racketeering act 21, conspiracy to distribute cocaine

14   and marijuana, in violation of the federal narcotics

15   laws.

16             The elements for that particular

17   racketeering act are first, that an unlawful agreement

18   between two or more individuals who were not working at

19   the direction of law enforcement, that an agreement

20   between two or more individuals to distribute marijuana

21   and cocaine existed, that you knowingly joined in that

22   conspiracy, in that agreement for the purpose of

23   distributing cocaine and marijuana, and they would have

24   to prove that it was done for remuneration or money,

25   that the distribution conspiracy was to raise money.

1          So they would have to prove the elements of

2   those racketeering acts in order for you to be found

3   guilty of this count.  They would have to prove the

4   other elements that I described to you for the

5   racketeering statute more generally.  All of those

6   things they would have to prove beyond a reasonable

7   doubt to a jury, and they would similarly have to prove

8   that at least some of the activities of the gang took

9   place here in the Eastern District of New York, which

10  includes Long Island.  They would have to prove that

11  the acts occurred on or about the dates that are

12  alleged in the indictment.

13          I know that was a long summary but do you

14  understand that that's in summary what the government

15  would have to prove to the jury beyond a reasonable

16  doubt, and that by pleading guilty today, you're giving

17  up your right to have them do so.

18          Do you understand that?

19          THE DEFENDANT:  Yes, I understand.

20          THE COURT:  I'm now going to review with you

21  the maximum penalties as well as any mandatory minimum

22  penalties for this crime you're pleading guilty to.

23          Count 1, the count you're pleading guilty to

24  charging a violation of Section 1962(c), the

25  racketeering statute of Title 18, carries a maximum

term of imprisonment of life.  There is no minimum term
of imprisonment.  The minimum term of imprisonment is
zero years.

There is a maximum supervised release term
of five years that would follow any term of
imprisonment.  There are conditions attached to
supervised release and if you violate any of those
conditions, you could be sentenced to up to five years
additional time in jail, without being given credit for
prerelease imprisonment or for time that was previously
served on post-release supervision.

You're also subject to a maximum fine of the
greater of $250,000 or twice the gross gain or loss
caused by the criminal enterprise.  You're also subject
to having to pay restitution to the victims of the
crime you're pleading guilty to, in an amount to be
determined by the Court at sentencing.  In the case of
murder, the restitution goes to the victim's family,
and restitution under this count is mandatory.  There
is a $100 mandatory special assessment.  In addition,
by pleading guilty, you are subjecting yourself to
removal from the United States, which I'll discuss more
with you in a moment.

Do you understand that those are the maximum
penalties as well as any mandatory minimum penalties

1   for the crime that you're pleading guilty to today?

2                 THE DEFENDANT:  Yes.

3                 THE COURT:  Are you a United States citizen?

4                 THE DEFENDANT:  No.

5                 THE COURT:  I just want to emphasize to you

6   that, again, as I stated a moment ago, by pleading

7   guilty today, you're subjecting yourself to removal

8   from the United States.  Removal for the crime that

9   you're pleading guilty to is mandatory.  So once you're

10  done serving your sentence and put into removal

11  proceedings, you're not going to be able to try to come

12  back to get your guilty plea back because you don't

13  want to be removed from the United States.  I just want

14  to be sure that you understand that.

15                 Do you understand that?

16                 THE DEFENDANT:  Yes, I understand.

17                 THE COURT:  The next thing I want to explain

18  to you is what the sentencing procedure will be.  It's

19  important before you plead guilty today that you

20  understand what the procedure will be.  I'm sure Ms.

21  Marcus has discussed this with you but, again, I'm

22  going to give you a basic summary.

23                 The first thing you have to understand is

24  that parole does not exist in the federal system.  So

25  once you're sentenced, you will not be released from

1    prison any earlier on parole.

2            The next thing you should understand is that

3    the determination of what sentence you'll receive is

4    made by the Court and only the Court.  Nothing that

5    your lawyer told you is binding on the Court, nothing

6    that the government lawyer might have told you is

7    binding on the Court.  As we sit in this courtroom

8    today, nobody knows what your sentence is going to be.

9    As I said, you'll be sentenced by the Court based upon

10   the presentence report and the submissions and

11   arguments by both sides in connection with your

12   sentencing.

13           The next thing you should understand is that

14   the current state of the law is that before the Court

15   imposes sentence, it is required to consider a number

16   of factors about the case.  There's a list of factors

17   that are contained in the statute.  I'm not going to

18   repeat the whole list for you but for example, one of

19   the factors is the nature and the circumstances of the

20   crime.  Another factor is your history and

21   characteristics as a person, whether they be positive

22   or negative.  There are other factors as well.

23           One of the other factors I do want to

24   mention is something called the sentencing guidelines.

25   The sentencing guidelines are as the name suggests, a

1    set of guidelines that takes into account any criminal

2    history that you might have, as well as the relevant

3    criminal conduct that you have committed in this case,

4    and then it sets forth a range of imprisonment within

5    which you could be sentenced.  I emphasize the word

6    "could" because these guidelines are not mandatory,

7    they are only advisory.  Therefore, the Court is not

8    required to impose a sentence within whatever the

9    applicable range may turn out to be.  The Court can

10   sentence you above that range or below that range,

11   depending upon how it weighs all the factors that it is

12   required to consider and balance under the law.

13           Finally, whatever sentence the Court imposes

14   in this case and no matter how happy or unhappy you may

15   be with that sentence, you may not withdraw or get back

16   your guilty plea.  In other words, while you may appeal

17   the sentence itself to the extent you have not waived

18   your right to appeal in your plea agreement with the

19   government, you may not undue your being found guilty

20   by virtue of your plea here today.

21           Do you understand that?

22           THE DEFENDANT:  Yes, I understand.

23           THE COURT:  Do you have any questions that

24   you'd like me to answer?

25           THE DEFENDANT:  No.

```
1              THE COURT:  Let me just go over the plea
2    agreement with you.  I have the original which we'll
3    mark as Court Exhibit 1 with signatures on the last
4    page.
5              Did you sign this plea agreement today in
6    the presence of Ms. Marcus?
7              THE DEFENDANT:  Yes.
8              THE COURT:  Was it translated for you word
9    for word by a Spanish interpreter before you signed the
10   agreement?
11             THE DEFENDANT:  Yes.
12             THE COURT:  Let me just confirm with Ms.
13   Marcus.  It says Ms. Bonea did translate it for him?
14             MS. MARCUS:  Yes.
15             THE COURT:  Did you discuss this agreement
16   with your attorneys before you signed it, Mr. Flores?
17             THE DEFENDANT:  Yes.
18             THE COURT:  Did you understand it before you
19   signed it?
20             THE DEFENDANT:  Yes.
21             THE COURT:  Mr. Talkin is the learned
22   counsel in this?
23             MS. MARCUS:  I am learned counsel.
24             THE COURT:  Okay, sorry, I got that
25   reversed.
```

1              MS. MARCUS:  That's okay.

2              THE COURT:  But he's been involved obviously

3    even to this stage or --

4              MS. MARCUS:  He has been involved but due to

5    the nature of the case --

6              THE COURT:  That's fine.  I just wanted to

7    ask him whether he's also satisfied with Mr. Talkin's

8    representation in this case because I neglected to ask

9    him that before.  But since Mr. Talkin was involved in

10   the case, I'm going to ask him that as well.

11             Are you also satisfied with Mr. Talkin's

12   representation of you in this case?

13             THE DEFENDANT:  Yes.

14             THE COURT:  I'm just going to highlight a

15   few things from the agreement, again just to make sure

16   you understand.  I know you discussed this with Ms.

17   Marcus and you read the agreement through the

18   interpreter.

19             In paragraph 2, it does contain the

20   calculation of the advisory guideline range.  I just

21   want to emphasize what I said to you a moment ago.  The

22   Court has an obligation to determine what the range is.

23   It's possible that the range could be different than

24   the one in the agreement, and whatever the range turns

25   out to be, whether it's the same or whether it's

1  different, whatever it turns out to be, as I said a

2  moment ago, it's not binding on the Court and the Court

3  can sentence you above or below whatever the range

4  turns out to be.

5          Do you understand that?

6          THE DEFENDANT:  Yes, I understand.

7          THE COURT:  In paragraph 4, you agree not to

8  file an appeal or otherwise challenge by petition

9  pursuant to Section 2255 or any other provision the

10  conviction or the sentence, in the event that the Court

11  imposes a term of imprisonment of 405 months or below.

12  In other words, what that means is that if the Court

13  sentences you to 405 months in jail or anything less

14  than 405 months in jail, you're giving up your right to

15  appeal or otherwise challenge in any way the conviction

16  or the sentence in this case.

17          Do you understand that?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Are you waiving that right

20  knowingly and voluntarily?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Does this agreement constitute

23  your complete and total agreement with the government?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Has anyone offered you any

1  inducement or threatened or forced you to enter into

2  this plea agreement or to plead guilty today?

3           THE DEFENDANT:  No.

4           THE COURT:  Has anyone made any promise to

5  you as to what your sentence is going to be?

6           THE DEFENDANT:  No.

7           THE COURT:  Ms. Marcus, do you know of any

8  valid defense that would prevail at trial, or do you

9  know of any reason why your client should not be

10  permitted to plead guilty today?

11           MS. MARCUS:  No, your Honor.

12           THE COURT:  At this point, Mr. Flores, I

13  need you to tell me in your own words what you did that

14  makes you guilty of Count 1 of the superseding

15  indictment.  Just tell me what you did.

16           THE DEFENDANT:  Good afternoon.  In 2016, I

17  joined the sailors 3 (ph) of the MS-13.  The MS-13 is

18  an organization that has leaders and rules.  On October

19  13, 2013, I joined --

20           THE COURT:  Wait, say that date again?

21           THE DEFENDANT:  On the 13th of October, 2016,

22  I helped other members of the MS-13 to commit the

23  murder that we thought was from a rival gang.  I

24  participated in this to increase my status in the gang.

25  In September, 2016 and January, 2017, I and other

 1  members of MS-13 sold marijuana and cocaine to help

 2  members of the MS-13, including members of MS-13 in El

 3  Salvador.  I agreed with other members of MS-13 to

 4  commit these crimes, knowing what I was doing at that

 5  time.  I knew it was wrong and that it was against the

 6  law.  Thank you.

 7            THE COURT:  Thank you.  The Court needs -- I

 8  know you had some notes there that you were referring

 9  to and that's fine, but the Court is required to make

10  sure that it's in your own words and that you're not

11  just reading from notes.  So I'm just going to ask you

12  to put that paper aside and I'm just going to ask you

13  some followup questions.  Again, it's covering some of

14  the same things that you just talked about, but I'm

15  just going to ask you some additional questions.

16            Tell me again, approximately when did you

17  join the MS-13 gang, what year?

18            THE DEFENDANT:  Approximately 2016.

19            THE COURT:  What clique were you a member

20  of?

21            THE DEFENDANT:  The sailors.

22            THE COURT:  Was there a geographic area

23  around Long Island where they primarily operated out

24  of?

25            THE DEFENDANT:  No, in the whole of Long

1    Island.

2           THE COURT:  Let's focus on the murder first,

3    the racketeering act, the murder of Mr. Stacks on

4    October 13 of 2016.  First of all -- again, if you

5    don't remember the exact location, can you just tell me

6    to the best of your memory where that murder took

7    place, what town?

8           THE DEFENDANT:  In Redwood.

9           THE COURT:  You and others agreed to murder

10   Mr. Stacks?

11          THE DEFENDANT:  Yes.

12          THE COURT:  What was the reason for the

13   murder?

14          THE DEFENDANT:  A problem with rival gang

15   members.

16          THE COURT:  You believed he was a member of

17   a rival gang?

18          THE DEFENDANT:  Yes.

19          THE COURT:  What rival gang did you believe

20   he was a member of?

21          THE DEFENDANT:  The Bloods.

22          THE COURT:  Just tell me what -- I think you

23   said you assisted in the murder.  Just tell me what

24   your role was in the murder.  What did you do?

25          THE DEFENDANT:  We beat him up until he was

1   unconscious.

2            THE COURT:  So you participated in beating

3   him up until he was unconscious?

4            THE DEFENDANT:  Yes.

5            THE COURT:  And then what happened?  How was

6   he killed?

7            THE DEFENDANT:  He died from the injuries

8   that we caused.

9            THE COURT:  In addition to using your fists,

10  were there any weapons used besides that?

11           THE DEFENDANT:  We used machetes and bats.

12           THE COURT:  Then with respect to the

13  conspiracy to distribute marijuana and cocaine between

14  September, 2016 and January, 2017, again, just tell me

15  -- you said you agreed with others to distribute those

16  drugs on behalf of the gang.  Just tell me again, what

17  did you do?  Tell me, what was your role.

18           THE DEFENDANT:  It was to raise money for

19  our own financial expenses.

20           THE COURT:  All right, but you sold

21  marijuana and cocaine on the street?

22           THE DEFENDANT:  Yes.

23           THE COURT:  And then when you got the money,

24  what would you do with the money, give it to other gang

25  members to use for the gang?

1              THE DEFENDANT:  Yes.  They were in charge of

2  distributing it for food and housing.

3              THE COURT:  I think you mentioned -- you can

4  correct me if I'm wrong.  I thought you said that some

5  of it went to El Salvador, to the gang in El Salvador.

6              THE DEFENDANT:  Yes, that's so.  We also

7  held members in the country of El Salvador.

8              THE COURT:  When you joined the gang and you

9  participated in the racketeering activity of the gang,

10  you did so knowingly and intentionally?

11              THE DEFENDANT:  Yes.

12              THE COURT:  And you obviously knew it was

13  against the law.

14              THE DEFENDANT:  Yes.

15              THE COURT:  Does the government want me to

16  put any other questions to Mr. Flores?

17              MS. GERACI:  No, thank you, your Honor.

18              THE COURT:  Can you summarize what the

19  government's proof would be as to this count against

20  Mr. Flores if he were to go to trial?

21              MS. GERACI:  Yes, your Honor.  If this case

22  were to proceed to trial, the government would prove

23  the defendant's guilt beyond a reasonable doubt through

24  credible evidence, including witness testimony, for

25  example the testimony of law enforcement witnesses who

1   responded to the scene of the Stacks murder.

2   Importantly, the testimony of several cooperating

3   defendants who are former members of the MS-13 and who

4   admitted to their own participation in this murder and

5   pleaded guilty themselves, and who would describe the

6   defendant's role in the murder and his drug-dealing

7   activities on behalf of the MS-13, as well as detail of

8   the existence of and the operations of the MS-13 as a

9   criminal enterprise that affects interstate and foreign

10  commerce.

11          To that end, Judge, we would show that the

12  MS-13 is an international criminal organization whose

13  top leaders live abroad, primarily in El Salvador,

14  Guatemala, Mexico, and Honduras, and who direct the

15  unlawful operations of the gang's members in the United

16  States from there using cell phones and social media

17  messaging.  Membership in the gang, we would show, your

18  Honor, is a lifelong commitment that includes

19  participation in criminal activities, including

20  murders, robberies, assaults, extortions, and drug

21  trafficking.

22          We would show that the MS-13 enterprise has

23  a hierarchy and rules, and that members must agree to

24  attach chavales (ph) or members of rival gangs such as

25  the Bloods, and that the MS-13 cliques raise funds

1  through street-level narcotics sales, and they maintain

2  inventories of firearms, ammunition, machetes, knives,

3  baseball bats, and other weapons to be used in assaults

4  and murders, and that members pay dues to the clique

5  treasurer, who uses the funds to purchase weapons, to

6  wire money to MS-13 leaders in El Salvador, and to

7  provide prison commissary money for assistance to MS-13

8  members who are incarcerated or who have been arrested.

9            Finally, the MS-13, we would show, is

10  organized into subgroups or cliques, and one of those

11  cliques is the sailor's clique, which operates all over

12  Long Island, including in the towns of Brentwood and

13  Central Islip, among other locations, and that the

14  defendant was a member of that clique.

15            Your Honor, with respect to the Stacks

16  murder, we would put on expert witness testimony and

17  expert reports such as from the Suffolk County Medical

18  Examiner, who performed the autopsy of Stacks and who

19  determined his manner of death as a homicide and his

20  cause of death as multiple sharp-force trauma and

21  multiple blunt-force trauma to his head as a result of

22  the machete and bat injuries, as well as laboratory

23  analysis of the narcotics seized in connection with

24  this case.  Additional evidence would include physical

25  evidence obtained from the crime scene such as

1    photographs of the scene, and phone evidence, including

2    telephone toll records and location information and

3    cell-site records pertaining to certain participants in

4    the Stacks murder, showing the communications between

5    and among the coconspirators and some of their

6    locations.

7              With respect to the substantive racketeering

8    acts, your Honor, the government would show that on or

9    about October 13th of 2016, in the vicinity of 231

10   American Boulevard in Brentwood, which is within

11   Suffolk County for venue purposes, that the defendant

12   conspired with other sailors clique members to murder

13   Stacks, who they believed was a member of the Bloods;

14   that on the night of the murder, the defendant and his

15   fellow clique members armed themselves with machetes

16   and a baseball bat, and that they drove in two vehicles

17   around Brentwood, hunting for rival gang members to

18   attack and kill.  When they spotted Stacks, believing

19   him to be a member of the Bloods, they decided to kill

20   him, and the defendant, who was armed -- the defendant

21   and two other MS-13 members who were armed with

22   machetes and a baseball bat got out of one of the cars

23   and viciously attacked Stacks, beating and hacking him

24   to death before fleeing the scene.

25              Finally, your Honor, with respect to the

1    racketeering act pertaining to drug dealing, the

2    government would show that the defendant conspired with

3    other sailors clique members to distribute narcotics,

4    specifically marijuana and cocaine, in 2016 and 2017,

5    that the defendant was a street-level dealer of these

6    drugs with other members of the sailors click, and that

7    the proceeds of the narcotics sales were returned to

8    the sailors clique to support and fund additional MS-13

9    activities.

10            THE COURT:  Through that, you would be able

11   to prove all the elements of the crime beyond a

12   reasonable doubt to the jury?

13            MS. GERACI:  Yes, your Honor.

14            THE COURT:  All right, thank you for that

15   detailed summary.

16            Mr. Flores, did you hear the prosecutor's

17   summary of the facts as it relates to your guilty plea

18   here today?

19            THE DEFENDANT:  Yes.

20            THE COURT:  Was that accurate?

21            MS. MARCUS:  I think we wouldn't be in a

22   position to dispute the government's evidence but I

23   don't think all of it is within Mr. Flores' knowledge.

24            THE COURT:  Right.

25            As it relates to you, Mr. Flores, was that

1  accurate?  What she described as your involvement, was

2  that accurate?

3          THE DEFENDANT:  Yes.

4          THE COURT:  I'm now going to formally take

5  your plea.  Mr. Flores, how do you now plead to Count 1

6  of indictment 16-43 (S-7) charging you with violation

7  of federal racketeering statute, including racketeering

8  act 18(b), the murder of Dewan Stacks, and conspiracy

9  to distribute cocaine and marijuana as set forth in

10 racketeering act 21, how do you plead to that count,

11 guilty or not guilty?

12         THE DEFENDANT:  Guilty.

13         THE COURT:  Are you pleading guilty today

14 because you are in fact guilty?

15         THE DEFENDANT:  Yes, guilty.

16         THE COURT:  Are you pleading guilty today

17 voluntarily and of your own free will?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Because you acknowledge that

20 you're guilty as charged in Count 1 of the superseding

21 indictment, because you know your rights and are

22 waiving them, because your plea is entered knowingly

23 and voluntarily and is supported by an independent

24 basis in fact for each of the elements of the offense,

25 I accept your guilty plea and I adjudge you guilty of

1    Count 1.

2              I just want to make clear with respect to

3    the allocution and the elements, sometimes I ask the

4    defendant and his counsel whether or not they dispute

5    the government's ability to prove the interstate

6    commerce element.  I believe he allocuted to that by

7    saying the money was sent to El Salvador.  But in any

8    event, I think it's clear, Ms. Marcus, that he's not

9    disputing their ability to prove any of those elements,

10   right?

11             MS. MARCUS:  He is not, no.

12             THE COURT:  We'll ask the Probation

13   Department to prepare the presentence report.

14             MS. MARCUS:  Your Honor, I would request to

15   be present at any Probation interview.

16             THE COURT:  Yes, that will be noted in the

17   paperwork, that Ms. Marcus wishes to be present.  Did

18   you discuss among yourselves a time frame for the

19   sentencing?  Four months or so?

20             MS. MARCUS:  I'm on trial -- back to back

21   trials, but I think I will have to file a letter later,

22   is that correct?

23             THE COURT:  Usually, we set a date now but

24   let me just ask -- hold on.

25             THE CLERK:  As of now, we've set a date for

1   February 28th at 2:00 p.m.

2               THE COURT:  Is that okay?  Is that

3   consistent with your -- obviously, it can always be

4   adjourned if there's an issue.

5               MS. MARCUS:  I will need additional time but

6   in speaking with your deputy, I understood that I

7   should -- there's a problem with the computer right now

8   so I should make a request at a later time, which is

9   fine.

10              THE COURT:  I just like to have a date.

11              MS. MARCUS:  February 28th is fine and then I

12   will --

13              THE COURT:  I have the calendar here so tell

14   me what date would be good for you.

15              MS. MARCUS:  I would request a date in May.

16              THE COURT:  Okay.  The government is okay

17   with that?

18              MS. GERACI:  Yes, your Honor.

19              MS. MARCUS:  Towards the middle or end of

20   the month.

21              THE COURT:  Just give me one second.  How

22   about May 25th at 11:00 a.m.?

23              MS. MARCUS:  Thank you.

24              THE COURT:  Is there anything else today

25   from the government?

1          MS. GERACI:  No, thank you, your Honor.

2          THE COURT:  Anything else from the defense?

3          MS. MARCUS:  No, thank you.

4          THE COURT:  All right, thank you very much.

5     Have a good day.

6          MS. MARCUS:  Thank you, Judge.

7                    *  *  *  *  *  *  *

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18         I certify that the foregoing is a correct

19   transcript from the electronic sound recording of the

20   proceedings in the above-entitled matter.

21

22

23

24

25   ELIZABETH BARRON                    December 15, 2022