

U.S. Department of Justice

United States Attorney
Eastern District of New York

PGS/JLG/MEF
F. #2016R01021

610 Federal Plaza
Central Islip, New York 11722

January 25, 2023

By ECF

The Honorable Gary R. Brown
United States District Judge
United States District Court
940 Federal Plaza
Central Islip, New York 11722

   Re: United States v. Santo Fernandez-Benitez
     Criminal Docket No. 16-403 (S-7)(GRB)

Dear Judge Brown:

  On June 9, 2022, the defendant Santo Fernandez-Benitez, also known as "Pelon," a member of La Mara Salvatrucha, also known as the MS-13, a transnational criminal organization, pleaded guilty to Count One of the seventh superseding indictment (the "Indictment"), charging Racketeering, in violation of 18 U.S.C. § 1962(c), including racketeering acts charged in connection with the August 12, 2010 attempted murder of John Doe #1 (Racketeering Act 1B); and a 2013 through 2016 conspiracy to distribute cocaine and marijuana (Racketeering Act 6).  The defendant is scheduled to be sentenced on January 27, 2023.

  According to the Probation Department, the defendant's total offense level is 32 and he should be sentenced within Criminal History Category III, which yields an advisory Guidelines sentence of 151 to 188 months' custody.  Pre-Sentence Investigation Report ("PSR") at ¶ 128.  There are two differences between the Guidelines calculations in the PSR and the one set forth in the plea agreement between the defendant and government.  First, in the plea agreement, the parties incorrectly estimated that the defendant should be sentenced within Criminal History I.  Plea Agreement at ¶ 2.  The PSR correctly calculates the defendant's Criminal History Category to be III.  PSR at ¶¶ 90-94.  Second, the plea agreement contains a provision for a 1-point global plea reduction, which the government will recommend the Court adopt at sentencing.  Should the Court apply the global plea reduction, the advisory Guidelines range will be 135 to 168 months' imprisonment.

  On December 14, 2022, the defendant submitted a sentencing memorandum ("Def. Mem.") wherein he requested a sentence of less than 100 months' imprisonment be

imposed.  Def. Mem. at 2.  Here, the Probation Department has recommended a sentence of 135 months' custody.  For the reasons set forth below, the government respectfully submits that, after considering the factors set forth in 18 U.S.C. § 3553(a), in particular, the seriousness of the offense conduct, the need for deterrence, and for the sentence to promote respect for the law, the Court should sentence the defendant to 135 months' imprisonment, which is at the bottom of the Guidelines range with the corrected Criminal History set forth in the PSR, and still within the Guidelines range contemplated in the plea agreement.

I. <u>**Background**</u>

The defendant's arrest and conviction resulted from an investigation by the Federal Bureau of Investigation's Long Island Gang Task Force (the "Task Force") into a series of violent crimes committed by members of the MS-13 street.  The defendant, who is a self-admitted member of the Brentwood Locos Salvatruchas ("BLS") clique of the MS-13, and dozens of other MS-13 gang members have been charged and convicted in a series of indictments with a litany of violent crimes, including 18 murders and numerous attempted murders and assaults in this case.

A. <u>August 12, 2010 Attempted Murder of John Doe #1 (PSR at ¶¶ 13-14)</u>

On August 12, 2010, John Doe #1 and a female acquaintance were standing near the intersection of Patchogue Avenue and Doane Avenue in Bellport, when a car drove past and several shots were fired from individuals inside the car.  John Doe #1 was struck twice, in the upper right leg and right arm.  The female acquaintance drove John Doe #1 to Brookhaven Memorial Hospital, where John Doe #1 was treated and survived the gunshot wounds.

Subsequent investigation determined that the shooting was carried out by the defendant and two others, all of whom were members and/or associates of the BLS clique.  The three gang members agreed to "put in work," by carrying out a shooting of either a rival gang member or MS-13 members believed to have cooperated with law enforcement.  The defendant and his co-conspirators obtained two firearms, a .38 caliber revolver and .25 caliber handgun, from other MS-13 members and drove around Suffolk County looking for people to attack.  While driving in Bellport, they observed John Doe #1, who was wearing red clothing, which caused the MS-13 members to believe he was a member of the rival Bloods street gang.  The defendant and another one of the armed MS-13 members fired multiple shots from inside the car, striking John Doe #1 in the leg and arm.  They then drove away and returned the firearms to the BLS clique.

B. <u>Conspiracy to Distribute Cocaine and Marijuana</u>

The PSR incorrectly states that the defendant conspired with other Sailors clique members to distribute cocaine and marijuana from April 2016 to March 2017.  PSR ¶ 56.  As set forth above and earlier in the PSR, the defendant is a member of the BLS clique, and he pleaded guilty to conspiring to distribute cocaine and marijuana with other members of the his clique, from January 2013 to December 2016, as charged in the Indictment.

During that time, the defendant and his fellow BLS members sold narcotics to raise money for the clique. The profits from the drug sales were used to purchase firearms, ammunition, and other weapons and to send money to leaders in El Salvador.

## II. The Defendant Should be Sentenced to 135 Months' Imprisonment

For the reasons set forth below, the government respectfully submits that the defendant should be sentenced to 135 months' imprisonment.

### A. Legal Standard

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court held that the Guidelines were no longer mandatory, but should be considered in conjunction with the factors outlined in § 3553(a). Thereafter, the Supreme Court confirmed that § 3553(a) requires a sentencing court to give respectful consideration to the Guidelines, but Booker allows the court to "tailor the sentence in light of other statutory concerns[.]" Kimbrough v. United States, 552 U.S. 85, 101 (2007) (citing Booker at 245-46 and Gall v. United States, 552 U.S. 38, 46-49 (2007)). However, the Supreme Court explained that even though the Guidelines are now advisory, "district courts must treat the Guidelines as the 'starting point and the initial benchmark'" when determining a defendant's sentence. Kimbrough at 108 (citing Gall at 50 and Rita v. United States, 168 L. Ed. 203, 213 (2007)).

With the Guidelines as the "starting point and the initial benchmark," the Court should next consider the factors set forth by Congress in § 3553(a). Id. That statute provides that a Court should consider a number of factors when determining a defendant's sentence, including:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; and
>
> (2) the need for the sentence imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. §§ 3553(a)(1) and (2).

### B. Analysis

Here, pursuant to the recent decisions of the Supreme Court, the Court's "starting point and the initial benchmark" should be the advisory Guidelines range of 217 to 241 months' custody. Kimbrough at 108 (citing Gall at 50 and Rita v. United States, 168 L. Ed. 203, 213 (2007)). In light of the sentencing factors set forth by Congress in § 3553(a),

3

the government respectfully submits that the defendant should be sentenced to a term of 135 months' imprisonment.

As an initial matter, with respect to § 3553(a)(1), it is self-evident that the defendant pleaded guilty to extremely serious offenses, the attempted murder shooting of an individual they wrongly suspected of being a rival gang member, which weighs heavily in favor of a significant sentence in this case. First, the conspiracy to murder rival gang members and attempted murder of John Doe #1 involved a disturbing plan to drive around residential communities looking for anyone the MS-13 members perceived to be rivals who they could shoot and kill. They observed John Doe #1, who was not known to the defendant and his co-conspirators but was targeted because of his race and what he was wearing, which led the MS-13 members to suspect that he was a rival gang member. The defendant and his fellow gang members' intense motivation to kill in order to elevate their status in the gang resulted in the brazen attack that could easily have ended John Doe #1's life. Thankfully and luckily, he survived his wounds. Furthermore, the offense is made more serious because it was committed in furtherance of the defendant's membership in the MS-13 and the gang's depraved mission to hunt and kill rivals. The defendant's offense conduct demonstrated his complete disregard for human life and commitment to the senseless acts of violence that are a hallmark of the MS-13. Accordingly, the nature and circumstances of the instant offense, which were part of a broader course of racketeering activities by the BLS clique and the defendant that included the sale of illegal drugs to fund its criminal activities, warrants a significant sentence.

The defendant's history and characteristics also weigh in favor of a significant prison sentence. The defendant's criminal history shows his early association with the MS-13 and his commitment to violence. In 2009, at age 16, the defendant was arrested and charged in connection with a knife assault that was related to his affiliation with MS-13 members. He pleaded guilty and was sentenced to six months in prison and three years' probation, which, after his release from prison, was revoked and he was sentenced to nine more months of prison for violating probation. The defendant's primary arguments in support of a lower sentence are based on his difficult and impoverished upbringing in El Salvador, which included the murder of his father when he was a child (the PSR states that the defendant reported being 5 years-old at the time [PSR ¶ 102], and the defendant's submission indicates that he was 8 years-old [Def. Mem. at 5]), and that, while in federal custody, he has turned to religion. Def. Mem. at 5-6. The defendant's difficult childhood in El Salvador is, unfortunately, not unique. There are countless immigrants born in impoverished countries who suffer extreme hardships, come to the United States to escape those conditions and do not join violent street gangs and participate in brutal acts of violence, like the defendant; but rather, become productive law-abiding members of society. Moreover, unlike many immigrants who lack a stable and safe living situation when they arrive in this country, when the defendant settled on Long Island at age 11, he was welcomed by his sister into a loving and supportive environment. PSR ¶ 103. However, instead of taking advantage of his positive family influence, stable living situation and opportunities here, the defendant chose to join the most violent and destructive street gang on Long Island and participate in their violent criminal activities.

4

Thus, the "nature and circumstances of the offense" and the "history and characteristics" of the defendant warrant a 135-month sentence, pursuant to § 3553(a)(l).

The Court must also consider the factors set forth in § 3553(a)(2)(A)-(C), which provide that a sentence should reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2)(A)-(C). These factors also weigh in favor of a significant sentence.

First, with respect to factor § 3553(a)(2)(A), for the reasons set forth above, the attempted murder of John Doe #1 and the defendant's lengthy criminal involvement with the MS-13 is extremely serious offense conduct and needs to be adjudicated in a manner that will promote respect for the law and provide just punishment for the offenses. As previously stated, the offenses are more serious because they were committed in furtherance of the MS-13 racketeering enterprise by the defendant and other members and associates of the gang.

Second, in regard to factor § 3553(a)(2)(B), affording adequate deterrence to criminal conduct, Long Island has been plagued by gang violence over the past several years; especially violence perpetrated by members of the Sailors clique of the MS-13. In the instant indictment alone, MS-13 members were indicted on charges relating to 18 murders between May 2013 and April 2017, and numerous other violent crimes. A sentence of 135 months would send a strong message that violent conduct such as that engaged in by the defendant and his fellow MS-13 gang members will not be tolerated.

Third, pursuant to § 3553(a)(2)(C), it is essential that the Court's sentence "protect the public from further crimes of the defendant." As set forth above, the defendant is a self-admitted member of the BLS clique of the MS-13, which makes him a greater risk of being a recidivist and committing additional violent crimes in the future.

**III.     Conclusion**

    For the reasons set forth above, and in light of the § 3553(a) factors, the government respectfully submits that the Court should sentence the defendant to 135 months' imprisonment.

                  Respectfully submitted,

                  BREON PEACE
                  United States Attorney

           By:  /s/ Paul G. Scotti
                  Paul G. Scotti
                  Justina L. Geraci
                  Megan E. Farrell
                  Assistant U.S. Attorneys
                  (631) 715-7836/7835/7862

cc:  Joseph Kilada, Esq. (By E-mail)