FILED
CLERK

2/16/2023 2:32 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
UNITED STATES OF AMERICA       *     Case No. 16-CR-403 (GRB)
                               *
                               *     Long Island Federal
                               *      Courthouse
                               *     100 Federal Plaza
       v.                      *     Central Islip, NY  11222
                               *
ALEXI SAENZ, et al.            *     December 14, 2022
                               *
              Defendants.      *
                               *
    *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
BEFORE THE HONORABLE STEVEN I. LOCKE
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

```
For the Government:            PAUL G. SCOTTI, ESQ.
                               MEGAN FARRELL, ESQ.
                               JUSTINA GERACI, ESQ.
                               Asst. United States Attorney
                               United States Attorneys Office
                               610 Federal Plaza
                               Central Islip, NY  11722


For the Defendant,             NATALI TODD, ESQ.
 Alexi Saenz:                  Law Offices of Natali J.H.
                                Todd, P.C.
                               26 Court St, Ste. 413
                               Brooklyn, NY 11242
```

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

Fiore Reporting and Transcription Service, Inc.
4 Research Drive, Suite 402
Shelton, Connecticut 06484 (203)929-9992

2

```
APPEARANCES:   (Cont'd)

For the Defendant,          VICTOR J. ABREU, ESQ.
 Alexi Saenz:              Federal Community Defender
                            Office, Capital Habeas Unit
                           601 Walnut Street
                           Suite 540 West
                           Philadelphia, PA  19106

                           JULIE ANN De ALMEIDA, ESQ.
                           Law Office of Julie DeAlmeida
                           P.O. Box 1058
                           Bronx, NY  10471

                           DONALD R. KNIGHT, ESQ.
                           Donald R. Knight, P.C.
                           7852 S. Elati Street
                           Suite 205
                           Littleton, CO  80120


For the Defendant,          GARY S. VILLANUEVA, ESQ.
 Jairo Saenz:              Gary S. Villaneuva, Attorney At
                            Law
                           11 Park Place, Ste. 1601
                           New York, NY 10007

                           KELLEY J. SHARKEY, ESQ.
                           Attorney At Law
                           26 Court Street, Ste. 2805
                           Brooklyn, NY 11242

                           JACQUELINE WALSH, ESQ.
                           Walsh & Larranaga
                           140 Lakeside Ave., Ste A-338
                           Seattle, WA 98122
```

3

```
 1    (Proceedings commenced at 2:37 p.m.)
 2              THE CLERK:  Calling case 16-CR-403, United States of
 3    America versus Saenz, et al.  Counsel please state your
 4    appearance for the record?
 5              MR. SCOTTI:  Good afternoon, Your Honor, Paul
 6    Scotti, Megan Farrell and Justina Geraci, for the United
 7    States.
 8              THE COURT:  Good afternoon.
 9              MS. TODD:  Good afternoon, Your Honor.  On behalf of
10    Alexi Saenz, Natali Todd, Donald Knight, Julie DeAlmeida,
11    Victor Abreu and Peter Williams.  Good afternoon, Your Honor.
12              THE COURT:  Good afternoon.
13              MS. SHARKEY:  Good afternoon, Judge.  Kelley
14    Sharkey, Gary Villanueva and Ms. Walsh are here for Jairo
15    Saenz.
16              THE COURT:  Good afternoon.  Please be seated.
17    Let's swear the interpreter.
18              (The interpreter is sworn.)
19              THE INTERPRETER:  I am a French interpreter. Good
20    afternoon, Your Honor.
21              THE COURT:  Good afternoon and thank you for joining
22    us Ms. Gray.
23               All right.  We're having this conference today
24    because I have all the motion papers now on the motion to
25    compel and, frankly, I want to come up with the most efficient
```

4

1    way possible to manage that motion and get a result without

2    writing 85 pages about it, if it's avoidable.  If it's not,

3    then that's what we'll do.

4              Having read the papers, it seems to me that the

5    motion, which if I recall correctly, was filed as much to

6    maintain the record in light of Judge Brown's deadlines, as it

7    was to get everything all at once.

8              Is that right, Mr. Villanueva. I believe you're the

9    one who told me that?

10             MR. VILLANUEVA:  I believe that's correct, Judge.

11             THE COURT:  Okay.  Having read the government's

12   response, it seems like the response has fell into several

13   buckets.

14             One is, we already produced this and here are the

15   Bate stamp numbers.  The other is, we're going to produce it,

16   and the third potential bucket, I have a question about, which

17   is, is there anything that was objected to and it's just

18   simply non-discoverable (indiscernible) alltogheter.

19             And in light of those buckets, addressing two and

20   three, and having reviewed Judge Brown's opinion from

21   11/9/2022 about discoverability of certain things relating to

22   any application as to death penalty authorization, he seemed

23   to recognize the big scope of what was discoverable.

24             So Mr. Scotti, are you going to be able to talk on

25   this, or?

5

1          MR. SCOTTI:  Your Honor, I think I would --

2          THE COURT:  We can move down the line.

3          MR. SCOTTI:  -- I think with specifics related to

4     the motion, I would -- I'm going to defer to my colleague, Ms.

5     Farrell.

6          But just with respect to what the court just said, I

7     do think that the discovery motion itself -- this discovery

8     motion itself, we don't view as being wrapped into the other

9     proceedings that are going on.

10         THE COURT:  No, I'm just trying to sort of read the

11    tea leaves based on that opinion.  But if I'm wrong, you

12    should definitely tell me that.  So with respect to the

13    discovery motion, I'd like to hear from both sides, but what's

14    really remaining, I guess, is what I'm saying, because the

15    original motion is quite lengthy.

16         MR. SCOTTI:  Your Honor, I would largely defer to

17    defense counsel with respect to the specifics of what they --

18         THE COURT:  Okay.

19         MR. SCOTTI:  -- any issues they have or objections

20    they have.  Obviously, there is a certain subset of evidence

21    that's indicated in their December 11th letter having to do

22    with -- largely having to do with phones of co-conspirators,

23    victims, although I don't know if the phones of victims are

24    mentioned in here, but of co-conspirators in the case, the

25    telephone extractions, the electronic extractions.

1          THE COURT:  Right.

2          MR. SCOTTI:  One of the things that we have been --

3     that we were discussing before Your Honor came out was that

4     issue to resolve that issue.

5          THE COURT:  Okay.

6          MR. SCOTTI:  I could tell you what we have proposed

7     and I think we're in agreement generally, is that we are

8     prepared to turn over to defense counsel the electronic

9     extractions of cell phones that were obtained from co-

10    defendants in the defendant's case that have pled guilty

11    publicly.  And that we are in the process of identifying what

12    falls into that bucket.

13         We don't believe it's a very -- it's going to be a

14    voluminous amount of phones, but we just want to be sure about

15    the number and for defendants that fall into that category, we

16    will be turning that over to them.

17         They asked us about a time frame.  You know, we

18    don't want to oversell and under-deliver, so we think 30 to 45

19    days given the holidays, is probably enough time.

20         And that we also indicated we would turn them over

21    on a rolling basis so if we did get an extraction from a phone

22    and we were still looking for others, we would just turn that

23    phone over.  We wouldn't do it all at once.

24         THE COURT:  Okay.

25         MR. SCOTTI:  Yeah.  And again, these are co-

1    defendants that are related to the racketeering acts that

2    these defendants are charged with.

3            THE COURT:  Okay.

4            MR. SCOTTI:  Because obviously this case had over 30

5    defendants and it was divided into a number of different trial

6    groups.

7            And you know, you have co-defendants who pled out

8    who are not relevant to the racketeering acts and the other

9    substantive counts that these defendants are charged with.

10           So what we're referring to are co-defendants who

11   were charged with committing the same crimes as these

12   defendants being in the same clique as these defendants, part

13   of the same conspiracy.

14           THE COURT:  Okay.  Let's jump back on something you

15   said sort of midway through, which is let me ask defense

16   counsel, what remains -- whoever wants to address it is fine,

17   of the motion to compel?  What do you need a decision on the

18   court on?

19           MS. TODD:  So Your Honor, Natalie Todd, speaking on

20   behalf of Alexi Saenz.

21           I think what would probably make sense, given that

22   we filed to the court indicating that there were substantial

23   amount of discovery that we believe was outstanding as it

24   applies to the enterprise for one, in this case.

25           And also under Rule 16(a)(1)(E)(i), we have

8

1     conferred with counsel for the government and they have

2     assured us that the -- in terms of the co-conspirators phones

3     and he has just expressed that to the court, that they're more

4     than happy to turn that over and that they will need time.

5          I think that covers a substantial part of that

6     electronic portion of the discovery because within the

7     contents of those phones or the different layers of

8     information that are relevant to the enterprise and also might

9     be relevant to one of the mitigating factors and aggravators

10    that the government charge and indicated in their notice of

11    intent which is leadership with respect to Justin Saenz's

12    brothers.

13         THE COURT:  Right.

14         MS. TODD:  And so you'll have the chats, you'll have

15    emails, you'll have all of that communication that we think is

16    highly relevant to the enterprise and to relative culpability

17    to some degree that would assist.

18         In terms of what else there might be, the government

19    indicates that they do not have in their possession certain

20    jail calls.  They'll look to see what they have and they'll,

21    as I indicate, turn over on a rolling basis.

22         I think it might make sense once we get that

23    information to examine it, assess it and come back to the

24    court at a later time, but I also think that counsel for Alexi

25    -- Jairo Saenz might have some additional information --

1          THE COURT:  Okay.  Let me just respond to that and

2     then tell me whatever you want to tell me.

3          One option would be, given that representation that

4     must obtain to the co-defendant at least in part, would be to

5     renew the motion after you have whatever's is going to be

6     produced and hopefully that motion will be shorter than this

7     motion --

8          MS. TODD:  Yes.

9          THE COURT:  -- and then we can just deal with that.

10    Okay, that being said, now please tell me whatever you want.

11         MS. SHARKEY:  Just one point, we're going to --

12         THE COURT:  It's better if you stand by the

13    microphone, excuse me that's fine.

14         MS. SHARKEY:  Oh, it is?  Okay, sorry.

15         One point that we're still working on, Judge, we

16    received the discovery on November 23rd. thank you to the

17    government for providing that with us.  but we will likely

18    supplement the discovery for certain requests that we don't

19    feel were fully answered.

20         An example of that is the DNA testing we believe is

21    incomplete and we would like to find out additional

22    information so that we can use appropriate experts, if

23    necessary.

24         THE COURT:  Okay.  That I think my -- the logic of

25    my statement was probably still obtained, meaning that you can

1     see what you're going to get and to the degree you think

2     perhaps you got discovery but it's incomplete, or something's

3     missing, you can certainly renew or add on to your request to

4     the court and we'll get you a ruling one way or the other.

5          I still suspect that a subsequent motion will be

6     shorter than what I got in the first instance, even with these

7     caveats.

8          Does that make sense to everybody then, to operate

9     that way.  You can have the government's rolling discovery and

10    then if another motion is necessary, make it.

11         Does anybody disagree with that half or object to

12    that?

13         MR. SCOTTI:  No, Your Honor, we don't object to that

14    in terms of a -- and I think that makes sense, as they're

15    going through it if they have supplemental requests and follow

16    up and we will address those accordingly and we're just kind

17    of it's like whittling this down as we go.

18         One thing just in connection with what Ms. Todd had

19    said before about jail calls, you know, Your Honor to the

20    extent that there -- we have jail calls of co-conspirators

21    then, you know, we can discuss with them about turning those

22    over and -- but it's, you know, we don't want to be put in a

23    position here where we're conceding that all of the -- all

24    jail calls are Rule 16 discovery that we're obligated to turn

25    these things over, but we're going to look at them -- first of

11

1    all, we have to see what we have --

2              THE COURT:  Yeah, I think --

3              MR. SCOTTI:  -- there are a lot of defendants and

4    it's just -- but we will notify them as to the results of our

5    search and then things that we're going to turn over, we'll

6    turn over and if they have follow up questions or issues,

7    we'll try to resolve them.

8              THE COURT:  Well I think that makes sense also

9    because then any follow up will likely be narrower than giving

10   the entire universe of every call.

11             MR. SCOTTI:  Yes.

12             THE COURT:  So I think that makes sense to proceed

13   in that fashion.

14             Ms. Todd, you wanted to add something?  No?  You

15   were kind of nodding so I thought maybe you had more.

16             MS. TODD:  No, Your Honor, thank you.

17             THE COURT:  Okay.  Is there anything else that we

18   need to address or should I just wait then to hear from you, I

19   guess.  I could maybe put together a status report for 60 day.

20   That would cover your 45 day window, Mr. Scotti, does that

21   make sense?

22             MS. SHARKEY:  Judge, can we have one second?

23             THE COURT:  Yeah, of course.

24        (Pause.)

25             THE COURT:  Oh, and a reminder to go to Judge Brown

1    when we're done.

2              MR. SCOTTI:  Yes, Your Honor.  We heard --

3              THE COURT:  I don't want to forget and I don't want

4    to hear about me forgetting later, so --

5              MR. SCOTTI:  It's like instead of a pop quiz, it's a

6    pop status conference.

7              THE COURT:  Correct.  Good luck.

8              MS. SHARKEY:  Your Honor, we request when the court

9    is scheduling this matter that the court schedule 45 days from

10   today, or close to that, to receive the government's response

11   which we could review.

12             THE COURT:  That fine to make a request. Is there

13   something that you're concerned about when you're picking that

14   date?

15             MS. SHARKEY:  No, just that our client would like to

16   have some dates on the table.

17             THE COURT:  Okay.  No, that's fine.  45 days?

18             MR. SCOTTI:  That's fine, Your Honor.  And with

19   respect to response, we're just talking about that -- the

20   phones that we were discussing before, is that correct?

21             THE COURT:  That's my impression only because that's

22   what we were talking about, but let's make sure we're on the

23   same page.

24             MS. SHARKEY:  I missed that, I'm sorry.

25             MR. SCOTTI:  Can I have a moment, Your Honor,

13

1      please?

2              THE COURT:  Yeah, sure.  Just make sure you turn

3      your mics off while you're talking.

4              (Pause.)

5              MS. SHARKEY:  Judge we're requesting that we receive

6      the information on the cell phones in 45 days.  We're not

7      suggesting that the status be in 45 days.  And if the

8      government --

9              THE COURT:  Yes.  I think Mr. Scotti was trying to

10     figure out whether it was the cell phones or something broader

11     than the cell phones in 45 days.  But okay, I think we're on

12     the same page then.

13             MR. SCOTTI:  Yeah, Your Honor, we -- and I

14     understand, I think we are on the same page, 45 days is fine.

15     Like I said, I believe that we'll be able to get them -- those

16     materials within 45 days.  If there is an issue with that, we

17     will contact counsel, we'll contact the court.  But we can do

18     a 45 day adjournment.

19             And I think I made this clear before Judge, but I

20     just want to make sure it's clear for the record.  This is

21     just for co-conspirator, co-defendants who have pled guilty

22     publicly.  This does not include cooperator phones and it does

23     not include victims phones and that is what we discussed with

24     counsel beforehand.  I just want to make sure that that's

25     clear.

14

1          THE COURT:  Okay.  Clear?  I'm getting no

2    objections, so we'll call it clear.  I'm just going to refer

3    to it as cell phone information addressed on the record

4    without getting granular on this.  And 45 days will put us at

5    February 1.

6          MS. SHARKEY: (Indiscernible).

7          THE COURT:  Correct.  If you produce -- withdrawn,

8    sorry.

9          If you file a joint status report in approximately

10   60 days, do you want it including any potential proposed

11   briefing schedule for a subsequent motion to compel on it, or

12   do you just want to have a conference and we'll work it out of

13   the conference?

14         MS. SHARKEY:  Conference.

15         MR. SCOTTI:  That's fine, Your Honor.

16         THE COURT:  Okay.  And we'll have that due on

17   February 15th.

18         MR. SCOTTI:  Is that the date the court is setting

19   for the status conference?

20         THE COURT:  No, that's the date for a status report

21   to the court and then based on what you submit and whether you

22   tell me, for example, it's an emergency, we got to get in,

23   we'll schedule a conference and we'll work it out.  Okay.

24         Is there anything else before you go upstairs?

25         MR. SCOTTI:  Nothing further from the government.

15

1    Thank you, Your Honor.

2              THE COURT:  For the defense anything else?

3              MS. SHARKEY:  No, Your Honor, thank you.

4              THE COURT:  Okay.  So I'm going to mark the motion

5    to compel withdrawn without prejudice to be resubmitted

6    depending on how things unfold.  Thank you everybody, we're

7    concluded.

8         (Proceedings concluded at 2:53 p.m.)

9              I, CHRISTINE FIORE, Certified Electronic Court

10   Reporter and Transcriber, certify that the foregoing is a

11   correct transcript from the official electronic sound

12   recording of the proceedings in the above-entitled matter.

13

14   *Christine Fiore*

15   _____         February 6, 2023

16      Christine Fiore, CERT

17

18

19

20

21

22

23

24