James M. Branden
80 Bay Street Landing, Suite 7J
Staten Island, New York 10301
Tel. 212-286-0173
Fax 212-286-0495

July 21, 2023

Hon. Gary R. Brown
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

Re: United States v. Ruendy Jhonatan Hernandez-Vasquez
Cr. Docket No. 16-403 (GRB)

Dear Judge Brown:

I represent Mr. Hernandez-Vasquez ("Ruendy"), who is to be sentenced in the above-referenced matter on July 28, 2023. For the reasons set forth below, a term of 240 months' imprisonment is, at worst, appropriate.

Background

This letter will assume the Court's familiarity with the profound political, economic and social woes of El Salvador for the last 50 years or so. In the briefest of histories, from 1979 to 1992, civil war ravaged El Salvador. The war pitted the government, military and landed gentry against the leftist guerillas and ordinary citizens suspected of supporting them. Entire villages were destroyed, tens of thousands were killed and more displaced. Many fled to the United States, especially Los Angeles, where they were marginalized and certain criminal networks were (inevitably) built. The end of the war ushered in a new force of lawlessness. The United States deported thousands of Salvadorans back, many of them members of MS-13. The gangs – principally MS-13 and its rival, 18th Street – fueled a cycle of bloodshed that deepened frustration with a political system that could not deliver peace. Especially in the poorest towns, gangs were the ultimate authority. They decided who could enter and at what time, which entrepreneurs could open a business and how much of a kickback they would owe, even who lived and for how long.

Ruendy was born in 1996, during the advent of gang rule, and

was raised in a poor village in the Chilanga region of the Morazon division of El Salvador. His parents were married and though both worked, his father in construction and his mother, Lorena, as a social worker, they struggled to eke out a meager existence. Ruendy has one sibling, a younger sister, Jaclene.

Ruendy had a fraught childhood. During the day, his parents were out of the house working long hours to make ends meet. At night, when home, they fought. Ruendy's father was abusive of Lorena and the children. Plus, there were bandits about (PSR at §109). Ruendy was fearful on many fronts and had no friends or playmates.

Education offered no solace. Ruendy's village did not have schools. As a result, Ruendy traveled to another village some distance away. Children from that village ostracized the few, like Ruendy, who were not local. Even of the outsiders, Ruendy was especially picked on as he was small and a "mama's boy," as it was expressed. As a result, in elementary and middle schools, he was alternately a truant and a loner, and underperformed in all areas.

The Chilanga region was controlled by MS-13 and Ruendy was recruited when he was just 13 years old, then in ninth grade. As his gang activities increased, his already minimal interest in academics sputtered out entirely. He was forced to repeat that grade and then dropped out for good.

At the age of 18, Ruendy was more deeply involved in gang activity, and he moved into a stash house occupied by other MS-13 members. One of the members shot him (for reasons unknown: the shooter later told him that he was bewitched, that a spell had been placed on him to kill one of his own). Ruendy nearly died of the wounds. He was hospitalized for more than three months during which he endured numerous surgeries, and he convalesced under Lorena's watch for some months thereafter. When, after six months or so, he returned to the gang, members were amazed he had survived, thus dubbing him "Solido."

Around this time, roughly 2014, Ruendy was having sex with several women. As a result, he had three children, now 7, 6 and 5 years old (the latter, the lone girl, was born after Ruendy entered the United States). Unfortunately, because his renewed gang activity had drawn the attention of local authorities, Ruendy was

unable to visit his immediate family, including his children or their respective mothers. For two years, Ruendy slept in the woods and mountains.

A devoted mother, fearful that she would lose her son to inter- or intra-gang violence or to imprisonment, Lorena took out a $10,000 loan and paid for her son's passage to the United States

including the 2016 killing of Javier Castillo, a rival gang member, and a conspiracy to distribute a relatively small amount of marijuana and cocaine.

Notable about the aftermath of this killing was Ruendy's attendance at a local, heavily Salvadoran church. An older family friend and co-worker, Jose Dui Vasquez (find his letter enclosed), who helped him secure construction-related jobs, introduced Ruendy to the church and its pastor. The friend/co-worker urged attendance (and drove Ruendy to services). Initially reluctant to engage with the church or its congregants, Ruendy came to accept Christ in the middle of a service, a public pronouncement during which the pastor and those proximate laid hands on him as they prayed for his salvation. Ruendy came away from that experience profoundly moved, believing that God's gift of forgiveness of sins offered a new lease on life. In her letter (also enclosed), Lorena – who left her husband and with her daughter (a letter from her is also enclosed) more recently relocated to Long Island – noted that Ruendy accepted God at the very church she now attends, a fact that alleviates her grief a bit and offers hope for Ruendy's future.

Conditions of Detention

Ruendy was arrested on July 31, 2018, and has been detained at the Metropolitan Detention Center (the MDC) since. He therefore suffered through, among other things, the power failures in the

winter of 2019 and its mistreatment of inmates during the Covid-19 pandemic, both notorious calamities.

The Guilty Plea Agreement

Pursuant to an agreement with the government, Ruendy pleaded guilty to racketeering, in violation of 18 U.S.C. §1962(c). In doing so, he acknowledged his involvement in the killing of Castillo and the conspiracy to distribute marijuana and cocaine. As to imprisonment, the statute carried a range of zero years to life. Under the guidelines, Ruendy had no prior criminal convictions and was therefore in criminal history category I.[1] As to imprisonment, the guidelines provided for a total offense level of 40, with a range of 292-365 months. However, the plea agreement also provided for a one-level reduction for a "mini" global disposition, which has come to pass. As such, the total offense level is 39, carrying a range of imprisonment of 262 to 327. If memory serves, Ruendy was the first of the defendants covered by the global disposition to plead guilty. As set forth below, that and other factors should allow for a downward variance from the guidelines range.

**ARGUMENT**

A 20-YEAR TERM OF IMPRISONMENT, AT WORST, WOULD BE SUFFICIENT UNDER THE PARSIMONY CLAUSE

Under 18 U.S.C. §3553(a)(2), the Court "shall impose a sentence sufficient, but not greater than necessary" to comply with generally recognized purposes of sentencing, including the need:

A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

---

1 While Ruendy is a zero-point offender, the two-level reduction proposed by the Sentencing Commission pending in Congress cannot be applied because the offense here involved violence and death. See 88 FR 28254 (May 3, 3023).

      B) to afford adequate deterrence to criminal conduct;

C) to protect the public from further crimes of the defendant; and

D) to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner.

Sentencing courts are also advised to consider, among other things: the nature and circumstances of the offense, the history and characteristics of the defendant, and the applicable sentencing range as established by the now-advisory sentencing guidelines. 18 U.S.C. §3553(a)(1), (4).

The Guidelines

A district court should begin all sentencing proceedings by calculating the applicable Guidelines range. Gall v. United States, 552 U.S. 38, 49 (2007). The Guidelines provide the "starting point and the initial benchmark" for sentencing. Id. As set forth above, the total offense level (with a one-point credit for mini global disposition) is 39 and the corresponding range of imprisonment is 262-327 months.

The Nature and Circumstances of the Offense

Ruendy has acknowledged his role in the killing of Javier Castillo with a machete, a truly heinous event. Castillo was killed because he was believed to be a member of the rival gang, 18th Street. Sadly, these killings result on both sides and are the result of long-entrenched gang warfare. Indeed, in this District, I am also presently representing a member of 18th Street, who allegedly played a part in the killing of his friend, an MS-13 member, the direct flip of this case. [redacted] While the criminal justice system seems an unlikely panacea to the underlying existence of these gangs and their internecine strife, a sentence of 240 months would seem sufficient to punish Ruendy, who has never previously served a prison term, and to deter him, especially as he will be roughly

40 years old by then, and past the age of active membership. Such a sentence should also deter the general public and send the message that offenders, even for whom there may be sympathy as to their particular circumstances and constraints, will receive very substantial prison terms.

The History and Characteristics of the Defendant

Ruendy's personal history is also mitigating. He grew up in El Salvador and even given that country's low standard of living he was raised in relative poverty. His village did not have a school so he was forced to walk to another village where he was mistreated by the other students as an outsider and a particularly "soft" one at that. For Ruendy, school was not a welcoming, learning environment, it was, like his home, a place to fear. He was a committed truant and bided his time until he could drop out, which was immediately upon finishing his second ninth-grade term. There was no possible future for him but gang membership. He chose MS-13 because that gang was dominant in Chilanga and he was embraced in a brotherhood for the first time. He was an active participant, living in an MS-13 stash house where he was shot, and later, in the mountains and woods. [redacted]

Ruendy has been detained at the MDC for five years. During that time he endured unimaginable conditions. The loss of power in the winter of 2019 led to frigid indoor temperatures (some areas in the 30s), no lights, no commissary (and therefore no extra blankets), no hot water, no hot food and lockdown. One week after power was restored, it happened again. The following year, Covid struck and the MDC was an epicenter of death and callous treatment of inmates. Lockdown conditions were the long-term norm, and the virus and its variants plagued the facility for years. The MDC was also a hot bed of regimented abuse of MS-13. In the past year and a half, while the rest of the general population was off lockdown, MS-13 members were in segregated housing (a new seventh floor SHU), in lockdown conditions. In short, the last five years at the MDC have been harrowing and inhumane, far more difficult than time

spent there by defendants in the past.[2]

As noted above, Ruendy was the first of his group to agree to plead guilty. As I understand it, this followed extended discussion among MS-13 members as they were in SHU. Ruendy was the galvanizing force. As such, he motivated the balance of his group and they fell in line, thereby saving the government and the Court the time, effort and costs associated with a lengthy trial. His proactivity, something like "super" acceptance of responsibility, can and should be considered as a basis for a downward variance.

Further, as a general matter, Ruendy possesses positive personality traits. He is a doting son to Lorena and loving brother to Jaclene. He provides money to his children when able [redacted] and he appears to have found God, forgiveness and a way forward. As a client he has been a pleasure.

<u>The Parsimony Clause</u>

As addressed above, a twenty-year term of imprisonment (five of them at the MDC) will provide just punishment for the offense and carry sufficient specific and general deterrence value. Further, to the extent Ruendy, as a removable inmate, can be afforded rehabilitative treatment, fifteen more years of imprisonment will allow for that. As such, a term of 240 months' imprisonment is sufficient but not greater than necessary.

---

2 While Ruendy has a short disciplinary record including charges of possession of a weapon (PSR ¶103), the weapon was not used and was possessed for defensive purposes only. He has not had a disciplinary violation in over three years.

Hon. Gary R. Brown
United States District Judge
July 21, 2023
Page 8

**CONCLUSION**

For the foregoing reasons, a sentence of 240 months' imprisonment or less is appropriate.

Respectfully submitted,

James M. Branden

Encs.

Honorable Judge:

In this letter, I would like to talk a bit with you about my friend, Jonathan. I met him in the city of Freeport. I was sharing the Lord's word and I made friends with him and invited him to church.

He is a very respectful, decent young man with a good attitude and good character. He has a humble way of expressing himself. I never saw him get mad, and he always wore a smile. He would call me and ask me to pick him up for church and one day he accepted God and he had a wonderful talk with the rest of the brothers. The pastor like him very much, and he was an agreeable young guy who helped out at church in any way he could. Jonathan was always obedient to me, and I thought he was very grateful to God. He would stop in and pray at the altar.

I would love to see him at church once again. We miss him a great deal. I would like to thank you in advance very much for reading my letter. Amen.

Sincerely,
Jose Dui Vasquez

Dear Judge Brown:

In this letter I have the honor of greeting you and wishing you success in all you do each day.

I am Ruendy's mother. About him, I can say he is a well-behaved young man, he never disrespected me, or his sister. We miss him a lot. He is very creative and loves to draw. He makes such pretty pictures for his children for every birthday. I have never received any complaints about Ruendy's behavior growing up. These are the reasons I am so sad about his court case, however I know it will teach him a lesson so that he will begin again in a different way. I ask god to give me the strength to keep going since I belong to a Christian church where Ruendy, too, accepted God. I know he was not there very long before he was arrested.

I would like to thank you for reading my letter. God Bless you.

Dear Judge:

I would like to tell you a few things about my brother.
He is a good person with a good heart.
He is my only sibling and I miss him. I would love to give him a hug.

I wish he could be released soon. I wish he could see my mother and father again, and his son. His son asks about him.

My brother is creative. He makes beautiful drawings for his son and for me. I know he suffers over not being able to see his son grow up.

He was never a problem kid, and always behaved at school. The teachers liked him very much.

This has taught him a lesson.

I really love and miss him.

Thank you in advance for your attention to my letter.