UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
UNITED STATES OF AMERICA,

      Plaintiff,

Case No. 16-CR-403 (GRB)

v.

JAIRO SAENZ and ALEXI SAENZ,

      Defendants.
---------------------------------------------------------X

**DEFENDANTS' JOINT RESPONSE IN OPPOSITION TO GOVERNMENT'S MOTION TO EMPANEL AN ANONYMOUS AND PARTIALLY SEQUESTERED TRIAL JURY (DE 2557)**

### I. Introduction

Defendants Alexi Saenz and Jairo Saenz, through undersigned counsel, file this Response in opposition to the government's Motion to Empanel an Anonymous and Partially Sequestered Trial Jury (DE 2557). For the reasons stated herein, the Court should deny the government's motion because it fails to marshal the evidence required to justify the extreme measures requested, which will infringe on these defendants' Fifth and Sixth Amendment rights to due process, the presumption of innocence, and a fair trial by an impartial jury. In the alternative, the Court should take reasonable precautions to minimize any potential prejudice, including: (i) utilizing a jury questionnaire and other jury-selection procedures as has been requested by the defendants (DE 2552); and (ii) order that counsel and their agents, but not the defendants, have access to the names of the potential and selected jurors subject to the Attorney Eyes Only (AEO) restrictions embodied in the protective order previously issued by the Court (DE 2286).

The government recycles a motion from 2012, which was filed in a case where the facts actually warranted granting an anonymous jury. *Compare* DE 2557, *with* Government's Motion in Limine in Support of Its Request for an Anonymous and Partially Sequestered Jury, *United*

*States v. Guzman*, 10-CR-074, DE 1014 (Sept. 7, 2012) [hereinafter "*Guzman* MIL"]. In that case, unlike here, obstructive acts had been committed by the defendants. Now, the government just reasserts similar facts—many of which are virtually identical—as a basis to grant a sequestered and anonymous jury in this case 12 years later. But the government utterly fails to demonstrate that the concerns that existed in *Guzman* remain present for the upcoming trials of *these* particular defendants. The Court should therefore deny the government's motion or at least hold an evidentiary hearing where the government must demonstrate the facts it claims require the measures it requests.

As a preliminary matter, it is important to note that the granting of the government's virtually identical motion regarding the trial of Jose Suarez should have no bearing on the Court's disposition of this matter. *See United States v. Suarez*, No. 16-CR-403 (JFB)(20), 2020 WL 7699663 (E.D.N.Y. Dec. 28, 2020). Importantly, as pointed out by the Honorable Joseph F. Bianco in granting the government's motion, Mr. Suarez did not file an opposition to the government's request. *Id.* at *1 n.1. Thus, Judge Bianco granted the motion without requiring the government to present evidence supporting its assertions. *Id.*

As will be discussed herein, this Court should deny the government's motion because empaneling an anonymous jury and partially sequestering the jury would unfairly dilute the presumption of innocence by starting the trial with the jury receiving an impression that the Court itself views the defendants as guilty and dangerous. At a minimum, before this motion can be granted, the government should be required to prove its factual assertions at an evidentiary hearing. Should the Court determine that some measures are needed, Messrs. Saenz respectfully request that this be accomplished through the disclosure of juror names to counsel and their agents, but not the defendants. The government claims any danger comes from MS-13. No

2

counsel is a member of MS-13. By stipulating to the AEO protective order, the government acknowledges that counsel and its agents can be trusted with sensitive information, including cooperator information. There is no valid reason to keep juror identities from counsel and their agents, and, as will be discussed, *infra* § III, there are important reasons that access to those identities is essential for the defendants to receive due process and the effective assistance of counsel as mandated by the Fifth and Sixth Amendments to the Constitution.

## II. Argument

### A. Legal framework

The empaneling of an anonymous jury is an unusual and drastic measure that is justified only if it is "genuinely called for." *United States v. Vario*, 943 F.2d 236, 239 (2d Cir. 1991). Because of the importance of the interests that are burdened by the practice, empaneling an anonymous jury "is a measure that should be taken only with care." *United States v. Bellomo*, 954 F. Supp. 630, 654 (S.D.N.Y. 1997); *see also*, *e.g. United States v. Millan-Colon*, 834 F. Supp. 78 (S.D.N.Y. 1993) (denying anonymous jury); *United States v. Melendez*, 743 F. Supp. 134, 135 (E.D.N.Y. 1990) (denying "drastic remedy of an anonymous jury"); *United States v. Coonan*, 664 F. Supp. 861, 862 (S.D.N.Y. 1987) (denying anonymous jury in the absence of evidence that the defendants—notwithstanding the fact they were charged with "predicate acts including murder, attempted murder, kidnaping, loansharking, extortion, and narcotics trafficking as part of a racketeering enterprise known as the Westies"—were likely to interfere with the judicial process). The Second Circuit has repeatedly and consistently held that this deviation from standard methods of jury selection is permissible only under circumstances where there is a showing by the government of a "strong reason to believe the jury needs protection." *United States v. Thomas*, 757 F.2d 1359, 1365 (2d Cir. 1985). Without this predicate showing, an anonymous jury may not be empaneled.

In assessing whether a jury truly "needs protection," and that, therefore, an anonymous jury is "genuinely called for," the Second Circuit has emphasized that "an obstruction of justice charge, particularly one involving jury tampering, has always been a crucial factor in our decisions regarding anonymous juries." *Vario*, 943 F.2d at 240; *see also United States v. Thai*, 29 F.3d 785, 801 (2d Cir. 1994) ("Anonymity may be warranted when the jury needs protection, as when the government has demonstrated a defendant's 'willingness . . . to tamper with the judicial process[.]'" (quoting *Vario*, 943 F.2d at 240) (first alteration in original)). Furthermore, the Court cautioned in *Vario*, "the invocation of words such as 'organized crime,' 'mob,' and 'the Mafia,' unless there is something more, does not warrant an anonymous jury." 943 F.2d at 241.

The reason a decision to impanel an anonymous jury may be made only after a strong showing of its necessity is that the practice places a burden on two important interests: the presumption of innocence and the defendant's interest in conducting a meaningful voir dire. As stated in *United States v. Amuso*, 21 F.3d 1251, 1264 (2d Cir. 1994), in considering a motion for an anonymous jury, a court "must balance the defendant's interest in conducting a meaningful voir dire and in maintaining the presumption of innocence against the jury's interest in remaining free from real or threatened violence and the public interest in having the jury render a fair and impartial verdict." *See also United States v. Wong*, 40 F.3d 1347, 1376 (2d Cir. 1994) ("Empanelling [sic] an anonymous jury undoubtedly has serious implications for a defendant's interest in effectively conducting voir dire and in maintaining the presumption of innocence"). In *United States v. Ross*, 33 F.3d 1507 (11th Cir. 1994), the Eleventh Circuit summarized the risks of an anonymous jury:

> Unquestionably, the empanelment of an anonymous jury is a drastic measure, one which should be undertaken only in limited and carefully delineated circumstances. An anonymous jury raises the specter that the defendant is a

4

dangerous person from whom the jurors must be protected, thereby implicating the defendant's constitutional right to a presumption of innocence.

Before balancing the need for an anonymous jury against the defendants' interest, the government must first make a showing that there is, in fact, "strong reason to believe the jury needs protection[.]" *Id.* at 1264. The Second Circuit has held that the need for precautionary measures exists "when a *serious threat* to juror safety reasonably is found to exist[.]" *Thomas*, 757 F.2d at 1364 (emphasis added). To demonstrate dangerousness, the government must identify a specific nexus between the defendants and the safety of the jurors in this case. *See United States v. Mostafa*, 7 F. Supp. 3d 334, 338 (S.D.N.Y. 2014) (rejecting motion for anonymous jury on material support of terrorism charges where the government "failed to present any evidence or to make any proffer that this defendant or this case presents a situation in which a jury faces real or threatened violence; they have presented no basis to suggest that there is any threat to juror safety, let alone a 'serious threat.'"). District courts have discretion "to determine whether or not an evidentiary hearing is needed on the government's allegations" of a need for juror protection. *United States v. Aulicino*, 44 F.3d 1102, 1116 (2d Cir. 1995).

The defendants agree that courts should assess such a request by reference to the four factors the government has outlined in its motion:

> (1) whether the defendant is dangerous, taking into account both the present charges and the defendant's criminal history;
>
> (2) whether the defendant has a history of interference with the judicial process;
>
> (3) whether the defendant, by himself or through his associates or criminal organization, has the means to interfere with the judicial process; and
>
> (4) media interest in the trial.

DE 2557 at 15-16 (citing cases).

5

    B. **The government fails to demonstrate that an anonymous and partially sequestered jury is necessary for *this* trial.**

To carry the first factor, the government relies solely on the unproven allegations in this case. DE 2557 at 16. The government admits that neither defendant has any criminal history. *Id.*

In support of the second factor, the government does not allege that either defendant has any history of interfering with the judicial process. Instead, the government simply relies on 17 purported facts in support of its request. DE 2557 at 6-12, 16. The government argues that, based on these examples, "the MS-13 street gang has a demonstrated history of interfering with the judicial process, which includes the attack on numerous individuals who the gang believed, correctly or incorrectly, to be government witnesses." *Id.* at 16. But the government completely ignores how temporally removed those incidents are from the trial in this case in September 2024. Of the government's 17 examples, seven occurred 14 years or more before trial in this case; three were 13-plus years before this trial; two 12-plus years; one 11 years; two 10 years; and one eight years. Most of these examples are from a single case, *United States v. Prado, et al.*, 10-CR-074, the case from which the government recycled its current motion. Indeed, the government merely reiterates an assertion it made almost 12 years ago, except in that case the government recognized the need to establish a nexus with the particular defendants on trial, asserting: "as set forth in detail above, the MS-13 street gang has demonstrated a history of interference with the judicial process, *including witness tampering and retaliation directed against several witnesses who will testify in the upcoming trial*." *Guzman* MIL at 16 (emphasis added). The grants of requests for anonymous juries in the *Prado*/*Guzman* trials were appropriate because "courts have found that an anonymous jury may be needed where *a defendant's* conduct demonstrates disrespect for the judicial process." *United States v. Tairod Nathan Webster Pugh*, 150 F. Supp. 3d 218, 225 (E.D.N.Y. 2015).

6

It is true that the government's seventeenth example does allege that Alexi and Jairo Saenz were part of a group of Sailors clique members who threatened a witness during the 2019 trial of Jose Suarez. DE 2557 at 12. But the government's assertion is based on an unsupported inferential leap that is not backed up by the transcript it cites. In that transcript, a witness says that unnamed "members" threatened him, and the government thus asserts that the people who threatened the witness "*include[ed]the defendants themselves*" simply because they were also in court that day. DE 2557 at 12. But the witness never claimed that either Alexi or Jairo Saenz threatened him or was even in the group that allegedly threatened him, and the government has provided no discovery supporting its claim that either Saenz brother had any involvement in threatening the witness. There is thus no *evidence* that either brother has engaged in any obstructive act. *See Thai*, 29 F.3d at 801 (anonymous jury granted based "in large part on evidence of defendants' acts of intimidation toward their crime victims, their attempts to kill certain of those victims, and the murder of Sen Van Ta because of his refusal to retreat from his complaints to the police"). The government has not charged either Saenz brother with obstructing justice, which it surely would have it if it had evidence they had threatened a witness on his way to testify. If the government insists on relying on this assertion to tread on these defendants' rights, the Court should require the government to establish the connection at an evidentiary hearing. *See Aulicino*, 44 F.3d at 1116. Notably, in arguing the second factor, the government does not actually rely on its allegation that these defendants participated in threatening the Suarez witness, DE 2557 at 16, tacitly acknowledging its evidentiary weakness. In sum, "[t]he Government has failed to present any evidence or to make any proffer that [these] defendant[s] or this case presents a situation in which a jury faces real or threatened violence;

they have presented no basis to suggest that there is any threat to juror safety, let alone a 'serious threat.'" *Mostafa*, 7 F. Supp. 3d at 338.

In support of the third factor, the government again does not make any allegations specific to either of these defendants who will be on trial. Rather, the government merely asserts that "there are numerous MS-13 members and associates at liberty, who have the means to continue to interfere with the judicial process." DE 2557 at 17. Importantly, the government offers no evidentiary support for this assertion. Indeed, this assertion appears to be word-for-word identical to the government's assertion in support of an anonymous jury made 12 years ago. *Guzman* MIL at 16 ("Third, while the defendant is incarcerated pending trial, there are numerous MS-13 members and associates at liberty, who have the means to continue to interfere with the judicial process."). Surely, with all the MS-13 prosecutions in the Eastern District since 2012, MS-13's status on Long Island cannot be the same now as it was in 2012. Before the Court grants the request for an anonymous and partially sequestered jury, the Court should require the government to establish this asserted fact at an evidentiary hearing.[1]

As for the fourth factor, the government correctly asserts that this case has received a significant amount of publicity and "more media coverage is expected in advance of and during trial." DE 2557 at 17. Indeed, the media coverage is such that the Court should grant the defendants' request for a change of venue or intra-district transfer (DE 2552). As for an anonymous and partially sequestered jury, however, this factor cannot carry the day. As the *Mostafa* court held:

> Notably, none of the charges against this defendant involves obstruction of justice or otherwise impeding the judicial process. This case presents a fact pattern that

---

[1] Again, regarding the Suarez jury, Judge Bianco declined to hold an evidentiary hearing regarding assertions such as this, specifically noting that the defendant had not submitted any opposition to the government's motion. *Suarez*, 2020 WL 7699663, at *1 n.1.

8

> has only two of the elements the Second Circuit requires: serious charges and significant media attention. Those elements do not, however, distinguish this case from any number of cases tried in this district each year.

7 F. Supp. 3d at 338. The same is true here, and this Court should, like the *Mostafa* court, deny the government's request.

The government does not explain the need for partial sequestration of the jury but just proposes procedures. DE 2557 at 20-21. These procedures themselves raise significant concerns about fairness and infringing the defendants' rights to due process and the presumption of innocence. As the *Mostafa* court ruled, "Indeed, the Court is almost more concerned with the 'other protective measures' that the Government requests than with the anonymous jury; those measures serve to remind the jury each day as they arrive and as they leave that this trial requires special handling." 7 F. Supp. 3d at 338. Because the government has not demonstrated the need for either an anonymous or a partially sequestered jury, the Court should deny the request.

**C. The disposition in *Suarez* should not influence this Court's determination.**

In its now-withdrawn May 9, 2024, Order, the Court expressed an interest in potential differences between *Suarez* and the present case "that would warrant consideration of a different conclusion" than the one reached by Judge Bianco. DE 2566. While this Court is not bound by the *Suarez* Court's determination even if the facts were identical, DE at 2572-1 at 20; DE 2576 at 10-11, there are significant differences between *Suarez* and the case at bar that warrant a different conclusion even if it were binding.

To start, based in part on the fact that the defendant in *Suarez* did not file an opposition to the government's request, Judge Bianco made a discretionary decision that the motion could be granted without an evidentiary hearing. *Suarez*, 2020 WL 7699663, at *1 n.1. Here, the defendants *have filed* a written opposition, and have identified two of four relevant factors where the government should be required to prove its factual assertions at an evidentiary hearing before

9

these assertions can be relied upon to adjudicate this motion. *See supra* at 6-8. Even if *Suarez* were in some way controlling, the government's motion should not be granted here unless it establishes its factual averments at a hearing.

Furthermore, Judge Bianco based his ruling in *Suarez*, in part, on the conclusion that "the defendant's right to a fair and impartial jury will be sufficiently protected by a careful and searching *voir dire*, which will be designed to uncover bias and consequently allow the defendant to meaningfully exercise his challenges." *Id.* at *7. In the case at bar, the government recommends no specific procedures in voir dire other than "the common practice in this district of extensive voir dire," DE 2557 at 18-19, and has expressed its opposition to the defendants' request for a jury questionnaire designed to uncover bias. DE 2572-1 at 15; DE 2576 at 16. If this Court grants the government's motion, then, as discussed, *infra* § III, the jury-selection procedures requested by the defendants or some other equivalent should be adopted for this trial.

### III. In the alternative, the Court should order that juror identities be disclosed to counsel and their agents, consistent with the AEO Protective Order.

If the Court is inclined to grant an anonymous jury, the Court must take reasonable precautions to minimize any prejudicial effects on the defendants and to ensure protection of their fundamental rights. *See Thai*, 29 F.3d at 801 ("If there is evidence to support the district court's finding of reason to believe the jury needs protection, and if the court has taken reasonable precautions to minimize any prejudicial effects on the defendant and to ensure protection of his fundamental rights, the decision to empanel an anonymous jury is reviewed only for abuse of discretion."). Here, in addition to what the government proposes, DE 2557 at 20-21, the Court should use the following precautions:

(i) utilize a detailed jury questionnaire and other jury-selection procedures that have been requested by the defendants, DE 2552; and

> (ii) order that counsel and their agents, but not the defendants, have access to the names of the potential and selected jurors subject to the AEO restrictions embodied in the protective order previously issued by the Court (DE 2286).

In upholding the use of an anonymous jury, the Second Circuit has pointed to the use of a thorough questionnaire as an important precautionary measure:

> In order to protect defendants' interests in jury selection, the court fashioned, with the input of counsel, a 68-question juror questionnaire designed to elicit pertinent information as to possible bias. The questionnaire made extensive inquiries into the jurors' personal backgrounds; it explored possible bias resulting from prior involvement with the legal system or with any of the individuals involved in the case; and it examined other potential barriers to the rendering of a fair and impartial verdict. In order to provide a nonprejudicial reason for maintaining anonymity, the introduction to the questionnaire stated, with the approval of the parties, that "[s]electing an anonymous jury is not an unusual practice and has been followed in many cases in Federal Court. Anonymity will ward off curiosity that might infringe on a juror's privacy . . . "

*Thai*, 29 F.3d at 801. Consistent with *Thai*, juror questionnaires have often been utilized in cases in this Circuit with an anonymous jury. *See*, *e.g.*, *United States v. Tutino*, 883 F.2d 1125, 1133 (2d Cir. 1989) (upholding anonymous jury where court used a questionnaire and conducted thorough voir dire); *United States v. Rivera*, 60 F. App'x 854, 858 (2d Cir. 2003) ("Voir dire included a lengthy questionnaire, into which both parties had input. Such questionnaires can sufficiently enable the selection of unbiased jurors so as to preserve the constitutionality of anonymous juries."); *United States v. Ashburn*, No. 13-CR-0303 NGG, 2014 WL 5800280, at *1 (E.D.N.Y. Nov. 7, 2014) ("For the reasons that follow, the court has determined that this balance weighs in favor of empaneling an anonymous and semisequestered jury. To assist it in conducting voir dire of potential jurors, however, the court has also decided to utilize a questionnaire."); *United States v. Taylor*, 17 F. Supp. 3d 162, 184 (E.D.N.Y. 2014) ("The Court finds that a jury questionnaire that provides the parties with detailed information about potential jurors will allow the defendants to make informed decisions during jury selection."), aff'd, 802 F. App'x 604 (2d Cir. 2020); *United States v. Mayes*, No. 12-CR-385 ARR, 2013 WL 6175824, at *6 (E.D.N.Y. Nov.

25, 2013) ("Through the questionnaire and the individual questioning of jurors, both sides will have access to all relevant information they will need to make informed choices during jury selection. Questionnaires have been used in numerous cases in this Circuit where courts have empaneled anonymous juries.") (citing cases); *United States v. Locascio*, 357 F. Supp. 2d 558, 564 (E.D.N.Y. 2005) ("To the extent that the defendants raised Sixth Amendment concerns, the Court simply observes that a detailed and lengthy questionnaire, drafted principally by defense counsel and including almost all the questions they sought, has been distributed to jurors. As a practical matter, the defendants learn far more about prospective jurors from the answers to the questionnaires than they would learn from the voir dire that is conducted when a jury is not anonymous."). Pending before the Court is the defendants' motion regarding certain jury-selection procedures, including the use of a questionnaire. DE 2547. If the Court does grant the request for an anonymous jury, it should also grant that motion and use the proposed questionnaire or a version of it.

      The Court should additionally order that counsel for the parties and their agents may have access to juror names, even if the defendants do not. Such procedure has been used in high-profile cases involving largescale organized crime where there was actual evidence of obstruction of justice (which the defendants submit is not present here). For instance, in *United States v. Gigante*, 982 F. Supp. 140, 150 (E.D.N.Y. 1997), "[j]urors were anonymous and partially sequestered; names of the prospective jurors were shared only with the attorneys." That was the case of a notorious mafia crime boss who himself made efforts to interfere with the judicial process and on whose behalf efforts were made to dissuade a cooperating witness from testifying. *See United States v. Bellomo*, 263 F. Supp. 2d 557, 559 (E.D.N.Y. 2003). Such procedure has likewise been used in other cases. *See, e.g., United States v. Napout*, 963 F.3d 163,

12

177 n.15 (2d Cir. 2020) (anonymous and partially sequestered jury where jurors' names were made available to the parties and their attorneys but were concealed from the public); *United States v. Raniere*, No. 18CR204NGGVMS, 2019 WL 2775617, at *1 (E.D.N.Y. July 2, 2019) (names of prospective and empaneled jurors were withheld from the public but made available to the parties, their attorneys, and their attorneys' staffs and consultants).

It is important that counsel and their staff have access to juror names so they can both conduct an informed jury selection and, importantly in this high-profile case that is sure to have ongoing media attention, monitor social media to ensure that no serving juror is making improper comments about the case or accessing information from outside the trial.

First, permitting such limited access will aid in the jury-selection process. Having access to juror names, in combination with the use of a questionnaire, will allow the attorneys to develop "a fair sense of the potential biases and beliefs of the prospective fact-finders" prior to voir dire, assisting in the seating of a neutral and impartial deliberative body. *Gigante*, 982 F. Supp. at 151.

Second, once a jury is empaneled, the limited access to the names of the jurors will help safeguard the integrity of the trial process. Juror use of social media during trial raises significant concerns, and those concerns are heightened in highly publicized cases like this. *See*, *e.g.*, Keegan Hamilton, *Inside El Chapo's Jury: A Juror Speaks for First Time About Convicting the Kingpin*, Vice News (Feb. 20, 2019) (discussing jurors' routine violation of order to avoid media and social media about the case)[2]; *see also*, *e.g.*, *United States v. Tsarnaev*, 96 F.4th 441, 452 (1st Cir. 2024) ("after being ordered not to 'communicate about this case or allow anyone to

---

[2] https://www.vice.com/en/article/vbwzny/inside-el-chapos-jury-a-juror-speaks-for-first-time-about-convicting-the-kingpin.

13

communicate about it with you by . . . Facebook,' and not to 'discuss anything about this case with anyone,' Juror 138 promptly returned to Facebook to continue his communications with his friends about the case. And, defense counsel complained, some of the comments by Juror 138's friends were particularly suggestive of bias and could potentially influence Juror 138's actions during the case."); *United States v. Feng Ling Liu*, 69 F. Supp. 3d 374, 378 (S.D.N.Y. 2014) (two jurors tweeting about case during trial); *United States v. Aiyer*, 433 F. Supp. 3d 468, 474 (S.D.N.Y. 2020) (juror made mid-trial podcasts). Importantly, as demonstrated by what occurred in *Tsarnaev*, *supra*, it is not just what jurors themselves might reveal on social media; it is also what information about the case the jurors might be exposed to, even inadvertently, through public posts directed at jurors by friends and followers and what others may say about the jurors. Attorneys for the parties can play an important role in checking for possible social media misuse during trial, but they cannot do so without access to the jurors' names.

No counsel is alleged to be a danger to any juror. No counsel for either the government or the defendants is alleged to be a member, associate, or affiliate of MS-13. The government has agreed that counsel and their agents can safely have access to information that could put individuals' lives in danger, including the lives of cooperating witnesses. There is no reason the same AEO restrictions that apply to discovery cannot adequately ensure juror safety.

Defense counsel offered not to oppose the use of an otherwise anonymous and partially sequestered jury inquired if the government would join in a request for counsel to have access to juror names. The government stated without explanation that it does not agree, and its position remains a fully anonymous jury.

### IV. Conclusion

For the reasons stated herein, the Court should deny the government's request for an anonymous and partially sequestered jury. If the Court does grant the government's request for

14

an anonymous jury, the Court should additionally order the use of a jury questionnaire and other jury-selection procedures that have been requested by the defendants, and the Court should order that juror names be disclosed to counsel and their agents.

Respectfully submitted this 3rd day of June 2024,

| | |
|---|---|
| s/Jacqueline K. Walsh<br>Jacqueline K. Walsh<br>Washington State Bar #21651<br>140 Lakeside Ave., #A-338<br>Seattle, WA 98122<br>(206) 325-7900<br>jackie@jamlegal.com<br><br>s/Eric K. Klein<br>Eric K. Klein<br>Colorado Atty. Reg. #42185<br>Johnson & Klein, PLLC<br>5398 Manhattan Circle<br>Boulder, CO 80303<br>(303) 444-1885<br>eklein@johnsonklein.com<br><br>Attorneys for Jairo Saenz | s/Monica Foster<br>Monica Foster<br>Indiana State Bar #8368-49<br>Executive Director<br>Indiana Federal Community Defenders, LLC<br>111 Monument Circle, Suite 3200<br>Indianapolis, IN 46204<br>(317) 383-3520<br>Monica.foster@fd.org |
| s/Natali Todd<br>Natali Todd<br>Law Offices of Natali J.H. Todd, P.C.<br>26 Court Street, Suite 413<br>Brooklyn, NY  11242<br>(718) 797-3055<br>natali_todd@yahoo | s/Victor J. Abreu<br>Victor J. Abreu<br>s/Peter Williams<br>Peter Williams<br>s/Anna K. Christensen<br>Anna K. Christensen<br>Federal Community Defender Office<br>for the Eastern District of Pennsylvania<br>601 Walnut Street, Suite 540W<br>Philadelphia, PA 19106<br>(215) 928-1100<br>victor_abreu@fd.org<br>pete_williams@fd.org<br>anna_christensen@fd.org |

Attorneys for Alexi Saenz

CERTIFICATE OF SERVICE

I certify a copy of the foregoing was filed electronically this 3rd day of June 2024. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                        s/ Monica Foster
                        Monica Foster