

|  |  |
|---|---|
|  | **U.S. Department of Justice** |
|  |  |
|  | *United States Attorney* |
|  | *Eastern District of New York* |
| JJD:PGS/JLG/MEF | *610 Federal Plaza* |
| F. #2021R01021 | *Central Islip, New York 11722* |

July 8, 2024

By ECF
The Honorable Gary R. Brown
United States District Judge
United States District Court
Eastern District of New York
940 Federal Plaza
Central Islip, New York 11722

    Re: United States v. Edwin Amaya-Sanchez
       Criminal Docket Nos. 15-CR-527; 16-403 (S-8)(GRB)

Dear Judge Brown:

    On April 4, 2018, the defendant Edwin Amaya-Sanchez, also known as "Strong," a member of La Mara Salvatrucha, also known as the MS-13, a transnational criminal organization, pleaded guilty, under Docket 16-CR-403, to Count Twenty-One, charging Causing the Death of Jose Lainez-Murcia ("Lainez-Murcia") Through the Use of a Firearm, in violation of 18 U.S.C. § 924(j). Additionally, on April 22, 2016, the defendant pleaded guilty, under Docket 15-CR-527, to a single count indictment, charging illegal reentry, in violation of 8 U.S.C. § 1326(a). The defendant is scheduled to be sentenced on July 10, 2024.

    According to the Probation Department, after a grouping analysis combining the two convictions, the defendant's total offense level is 40, and he should be sentenced within Criminal History Category I, which yields an advisory Guidelines sentence of 292 to 365 months' imprisonment. Pre-Sentence Investigation Report ("PSR") at ¶ 130. The Guidelines calculation set forth in the PSR is the same as that set forth in the plea agreement between the defendant and the government.

    On June 7, 2023, the defendant submitted a sentencing memorandum ("Def. Mem.") wherein he requested a sentence of 240 months, which is below the advisory Guidelines range in the plea agreement. Def. Mem. at 1, 5. For the reasons set forth below, the government respectfully submits that, after considering the advisory Guidelines range and the factors set forth in 18 U.S.C. § 3553(a), in particular, the seriousness of the offense conduct, the need for deterrence, and the need to provide a just punishment for the defendant's crimes, the Court should sentence the defendant to 30 years' imprisonment.

I.  **Background**

The defendant's arrest and conviction resulted from an investigation by the Federal Bureau of Investigation's Long Island Gang Task Force (the "Task Force") into a series of violent crimes committed by members of the MS-13 street gang. The defendant, who is a self-admitted member of the Sailors clique of the MS-13, and dozens of other MS-13 gang members have been charged and convicted in a series of superseding indictments with a litany of violent crimes, including 18 murders and numerous attempted murders and assaults in this case.

    A.  The July 14, 2014 Murder of Jose Lainez-Murcia (PSR ¶ 23)

The defendant, who was a member and leader of the Guanacos Lil Cycos Salvatruchas clique ("Guanacos"), worked with Lainez-Murcia at a landscaping company. While working with the victim, the defendant overheard him claiming that he was an assassin in El Salvador and had killed a number of MS-13 members. Afterwards, the defendant discussed what he had heard with two other MS-13 members, Edwin Claros ("Claros"), a member of the Brentwood Locos Salvatruchas clique, and Byron Lopez ("Lopez"), a member of the Jamaica Locos Salvatruchas clique. The three agreed to kill Lainez-Murcia for killing MS-13 members in El Salvador. Because the defendant worked with the victim, he knew where Lainez-Murcia lived and what time he left for work. In the early morning hours of July 14, 2014, the defendant drove Claros and Lopez, both of whom were armed with 9mm handguns, to the neighborhood where Lainez-Murcia lived. He stopped close to where the victim lived, and the two gang members got out of the car and waited outside of Lainez-Murcia's house for him to leave for work. When Lainez-Murcia left the house and got into his car, Claros and Lopez approached and began firing. Lainez-Murcia was struck multiple times and killed. Claros and Lopez then ran away from the house and were picked up a short distance away by the defendant who drove them away from the area.

    B.  Illegal Reentry (PSR ¶ 5-7)

On March 22, 2010, the defendant was deported to El Salvador after being arrested by ICE officials in New York on an alien removal warrant. Years later, on September 21, 2015, the Task Force arrested Amaya-Sanchez in Suffolk County after receiving information from a confidential source that he was back in the United States and living on Long Island, in Brentwood. The defendant, who is a citizen of El Salvador, admitted at the time of his arrest that he illegally reentered the United States approximately five months after being deported without requesting permission from the Secretary of the Department of Homeland Security. The defendant further admitted to being a member of the MS-13.

**II.     The Defendant Should Be Sentenced to 30 Years in Prison**

For the reasons set forth below, the government respectfully submits that the defendant should be sentenced 30 years' imprisonment.

   A.     Legal Standard

In <u>United States v. Booker</u>, 543 U.S. 220 (2005), the Supreme Court held that the Guidelines were no longer mandatory, but should be considered in conjunction with the factors outlined in § 3553(a). Thereafter, the Supreme Court confirmed that § 3553(a) requires a sentencing court to give respectful consideration to the Guidelines, but <u>Booker</u> allows the court to "tailor the sentence in light of other statutory concerns[.]" <u>Kimbrough v. United States</u>, 552 U.S. 85, 101 (2007) (citing <u>Booker</u> at 245-46 and <u>Gall v. United States</u>, 552 U.S. 38, 46-49 (2007)). However, the Supreme Court explained that even though the Guidelines are now advisory, "district courts must treat the Guidelines as the 'starting point and the initial benchmark'" when determining a defendant's sentence. <u>Kimbrough</u> at 108 (citing <u>Gall</u> at 50 and <u>Rita v. United States</u>, 168 L. Ed. 203, 213 (2007)).

With the Guidelines as the "starting point and the initial benchmark," the Court should next consider the factors set forth by Congress in § 3553(a). <u>Id</u>. That statute provides that a Court should consider a number of factors when determining a defendant's sentence, including:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; and
>
> (2) the need for the sentence imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. §§ 3553(a)(1) and (2).

   B.     Analysis

Here, pursuant to the recent decisions of the Supreme Court, the Court's "starting point and the initial benchmark" should be the advisory Guidelines range of 292 to 365 months. <u>Kimbrough</u> at 108 (citing <u>Gall</u> at 50 and <u>Rita v. United States</u>, 168 L. Ed. 203, 213 (2007)).

As an initial matter, with respect to § 3553(a)(1), it is self-evident that the defendant pleaded guilty to an extremely serious offense, a premeditated and violent murder where the victim was unarmed and ambushed, which weighs heavily in favor of a significant sentence in this case. The defendant orchestrated the murder, soliciting help from Claros and Lopez to eliminate the victim as revenge for his unverified statements that he killed MS-13 members in El Salvador. Based on that, the defendant and the others executed this brazen murder on a residential street in Brentwood. Indeed, the defendant and his fellow gang members were so determined to kill that they were not deterred by the risk of harming innocent civilians who lived in the immediate vicinity of the murder who could have been struck by a stray bullet, demonstrating an even greater disregard for human life. Furthermore, even though the defendant's actions did not result in physical harm to innocent bystanders in the community, the fear and anxiety caused by such a public and brazen crime to the innocent families living in the area cannot be overstated and further warrants a lengthy prison sentence. Moreover, the defendant's response to hearing what that the victim might have committed violence against the MS-13 in El Salvador further shows his devout commitment to the violent mission of the gang and its rules, most significantly, identifying and killing rival gang members or anyone who has disrespected the MS-13. That the defendant committed this crime in furtherance of the MS-13 makes the offense conduct even more serious. Thus, the nature and circumstances of the instant offense warrants a sentence at the top of the agreed-upon Guidelines range.

Moreover, the defendant's history and characteristics also weigh in favor of a significant prison sentence. Far from a reluctant member of the MS-13 or a half-hearted participant in its violent mission, the defendant's steadfast commitment to the gang is evidenced by his promotion to Homeboy and his assent to a leadership position. Indeed, as a leader, he enforced the rules of the gang on lower ranking members and actively promoted the gang's depraved ideology. The defendant's longtime membership and leadership role in such a violent and destructive gang warrants a significant sentence in this case.

One of the defendant's primary arguments for a reduced sentence relies on his difficult upbringing in El Salvador, where the defendant asserts he was raised "in abject poverty without running water in constant fear of being killed by sectarian violence." Def. Mem. at 5. The defendant's background is certainly something that the Court can consider when determining a proper sentence, however, the defendant's circumstances growing up in El Salvador are, unfortunately, not unique. Indeed, there are countless immigrants born in impoverished countries who suffer extreme hardships, come to the United States to escape those conditions and work to help financially support their families back home, and do not join violent street gangs and commit murder. Furthermore, the defendant's claim that he has "aged" out of crime given his current age (Id. at 6) is not a credible mitigating argument and is particularly undermined in this case based on the defendant's membership in a transnational criminal organization, which elevates the likelihood of his continued association with the MS-13 once he is released, particularly given the prominent position he held in the gang on the street.

Thus, the "nature and circumstances of the offense" and the "history and characteristics" of the defendant warrant a sentence 30 years, pursuant to § 3553(a)(l).

The Court must also consider the factors set forth in § 3553(a)(2)(A)-(C), which provide that a sentence should reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2)(A)-(C). These factors also weigh in favor of a sentence at the top of the Guidelines range.

First, with respect to factor § 3553(a)(2)(A), for the reasons set forth above, the murder of Lainez-Murcia is an extremely serious offense and needs to be adjudicated in a manner that will promote respect for the law and provide just punishment for the crime. As previously stated, the offense is more serious because it was committed in furtherance of the MS-13 racketeering enterprise by the defendant and other members of the gang.

Second, in regard to factor § 3553(a)(2)(B), affording adequate deterrence to criminal conduct, Long Island has been plagued by gang violence committed by the MS-13 for well-over a decade. In the instant indictment alone, MS-13 members were indicted on charges relating to 18 murders between May 2013 and April 2017, and numerous other violent crimes. A sentence of 30 years would send a strong message that violent conduct such as that engaged in by the defendant and his fellow MS-13 gang members will not be tolerated.

Third, pursuant to § 3553(a)(2)(C), it is essential that the Court's sentence "protect the public from further crimes of the defendant." As set forth above, the defendant is a self-admitted member and leader of the Guanacos clique of the MS-13, which makes him a greater risk of being a recidivist and committing additional violent crimes in the future.

Finally, as to the defendant's argument that his incarceration during both the power loss in 2019 and the Covid pandemic warrants a sentence even lower than the agreed-upon Guidelines range, the Second Circuit recently noted, in affirming a sentence where the district court came "down from the high end to the low end [of the Guidelines range]," that it was "aware of no authority suggesting that a district court imposing a sentence is obligated to assign even [that] much weight, let alone more, to the harsh prison conditions brought on by the pandemic." United States v. Edwards, No. 21-1248, 2022 WL 1553455, at *2 (2d Cir. May 17, 2022) (holding that a sentence at low end of Guidelines range where court considered harsh conditions of confinement during pandemic, among other mitigating factors, was not substantially unreasonable). Here, any mitigating value considered by the Court based on the defendant's conditions of confinement is far outweighed by the other § 3553(a) factors in this case, including, without limitation, the horrific nature of the offense conduct, the need to protect the public from future crimes of the defendant and provide adequate punishment and deterrence for the defendant's crimes.

5

**III.    Conclusion**

   For the reasons set forth above, and in light of the § 3553(a) factors, the government respectfully submits that the Court should sentence the defendant to 30 years' imprisonment.

              Respectfully submitted,

              BREON PEACE
              United States Attorney

         By:  /s/ Paul G. Scotti
              Paul G. Scotti
              Justina L. Geraci
              Megan E. Farrell
              Assistant U.S. Attorneys
              (631) 715-7836/7835/7862

cc:  John Buza, Esq. (By email)